## Charley Caples v. State.

### No. 2160. Decided February 26, 1913.

**1.—Aggravated Assault—Continuance—Impeaching Testimony.**

Where the application for continuance did not show proper diligence, and the absent testimony was of an impeaching character, there was no error in overruling same. Following Butts v. State, 35 Texas Crim. Rep., 364.

**2.—Same—Evidence—Drunkenness.**

In the absence of testimony that the prosecuting witness was drunk, there was no error in excluding testimony that when he was drunk that he did not know anything until he became sober.

**3.—Same—Evidence—Physical Examination.**

Upon trial of aggravated assault where the evidence showed that the prosecuting witness was severely whipped with switches, there was no error in introducing testimony of a physical examination of said witness, within two or three days after said assault, to show the condition of his body.

**4.—Same—Evidence—Imputing Crime to Another.**

Where the witness could not recall who the persons were that talked about whipping the prosecuting witness some months before the alleged offense, there was no error in excluding his testimony.

**5.—Same—Evidence—Moonlight—Almanac.**

Where the testimony did not show that there was moonlight at the time of the alleged assault, and the hour was not definitely fixed, the exclusion of an almanac as testimony to show that the moon was down at a certain time of night was not material.

**6.—Same—Evidence—Impeaching Witness.**

Where the defense had laid a predicate to impeach the testimony of the prosecuting witness, there was no error in anticipating such attack upon the witness and permitting the State to show that said witness had made similar statements to others with reference to certain things.

**7.—Same—Charge of Court—Alibi.**

Where, upon trial of aggravated assault, the evidence did not raise the issue of alibi, there was no error in the court's failure to charge thereon.

**8.—Same—Charge of Court—Simple Assault.**

In the absence of evidence raising the issue of simple assault, there was no error in the court's failure to charge thereon.

**9.—Same—Charge of Court—Principals.**

Where, upon trial of aggravated assault, the evidence raised the issue of principals, the court correctly charged thereon.

**10.—Same—Aggravated Assault—Means Used—Disgrace.**

The statute is broad enough to embrace any instrument with which a whipping may be administered, if done under circumstances which would inflict disgrace.

Appeal from the County Court of Sabine. Tried below before the Hon. T. R. Smith.

Appeal from a conviction of aggravated assault; penalty, a fine of $100.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.—On question of corroborating State's witness: Hamilton v. State, 36 Texas Crim. Rep., 372; Kirk v. State, 35 id., 224; Reddick v. State, 35 id., 463; Campbell v. State, 35 id., 160; Duke v. State, 35 id., 283; English v. State, 34 id., 190; Gibson v. State, 23 Texas Crim. App., 414.

HARPER, JUDGE.—This is a companion case to that of Curtis Craig and others now pending before this court in which they are all charged with making an aggravated assault on Joe Horton.

Horton testified: "I lived on July 30, 1911, on the Thornhill place three or four miles southeast from the home of John McGown, at that time. John McGown, who was a very old man, is my brother-in-law. He married my sister. I went to John McGown's house about dark on the 30th of July, 1911, to carry some buttermilk for him to drink. He was sick at that time and had been for two or three weeks, and I had been sitting up with him about every other night. When I reached the house that night John Travis and Jim Bailey were sitting on the gallery. Dr. Mann McGown, a son of John McGown, was in the house. Bud Smith came in a little later and stayed a while and left. Tom Jack was also there for a while. Henderson McGown was also there that night. There were two or three women also there. I sat down by the bed and was fanning old man McGown just after dark when Joe Click, John Russell, Charlie

Caples, Hardy Thornton and Curtis Craig came. Bud Smith came in and asked how Mr. McGown was and said he would go home. He left and I heard him singing on his way home. About 8:30 Hardy Thornton came to the door and invited me out and I went out with him into the yard. He got over the yard fence (there was no gate) and I followed him over the fence. Just as I got over the fence Charley Caples, and John Russell and Joe Click jumped up from behind the fence and grabbed me. Some one asked me if I had any money. Caples and Thornton held me by the arms and Click held me by the neck and choked me. They carried me about two hundred yards down the road and searched me. The only thing I had was a pocket knife and they took that. They then took a drink and Click asked me if I wanted a drink and I told him no, and Click said to me, 'You God damned son of a bitch, we've got something else besides whisky for you.' They threatened to hang me and said they would shoot me if I even grunted. They then took me immediately about a quarter of a mile, and took me up to a tree near the road and held my arms around the tree while they beat me with switches. Click was the first one to strike me. They all took turns at whipping me, and kept it up until I promised not to tell about it. They must have whipped me an hour and a half or two hours. They took my pants down and raised my shirt and whipped me on my naked skin. Curtis Craig was the one that took my pants down. Russell and Caples were the ones that held me up to the tree. There were five of them. Curtis Craig, Hardy Thornton, John Russell, Joe Click and Charlie Caples. They talked about killing me. Caples said let's kill him. 'Dead cocks don't crow.' While they were whipping me John Russell struck a match and looked at his watch and said it was 11 o'clock. I think myself it was about that time. They kept me for about a half or three quarters of an hour longer and turned me loose. I went in direction of my home. I was pretty badly beaten up in the small of my back and on my thighs. I was laid up the next day. They used a beech limb and ironwood switches. The last lick I received was by Curtis Craig, who struck me with a dogwood limb or pole about three and one-half inches in diameter. It was a dead pole and broke when he struck me with it. The place where I was whipped was about one-quarter of a mile from John McGown's house. They whipped me in the woods near the road. The timber was not so very thick. It was about the same distance to the next nearest house. I did not see or hear any one on my way home. I went back to the place of the whipping on Tuesday morning after the whipping on Sunday night and found some switches there. (Identifies switches.) I carried them to John McGown's and showed them to Jeff McGown and George McGown, and I then brought them to Hemphill and showed them to Deputy Sheriff R. H. Minton and the Justice, Mr. Barker. I brought them here on Wednesday after I was whipped. I was whipped in Sabine County, Texas.''

Appellant testified that he and others went to Mr. McGown's to wait on the sick, and that Joe Click carried a bottle of whisky along to give to the sick, but was informed that McGown did not need it, and then testified: ''Joe Click then said, well, we might as well drink it up.'' We walked out in the yard, crossed the fence in front of the house and walked down the road some thirty or forty yards and sat down. Joe Horton, John Russell, Hardy Thornton, and Curtis Craig were along. When we sat down Joe Click passed the bottle around and we all took a drink. We sat there and talked a little bit and all took another drink. When the whisky, about half a quart of it, was gone, Joe Horton remarked that he had been sitting up and was about played out and believed he would turn in. He started off towards home in the direction of Alex Dickersons. This was the same road taken by Bud Smith when he started home. I have been living at Bronson for about ten years, and have known Joe Horton for about that length of time. I have never had any trouble with or hard feelings toward Joe Horton. Never had anything against him. I did not assault or assist in doing so. None of the other defendants molested him in any way there that night. When he left us sitting by the road side that night about forty yards from McGown's house, we sat there for a while and talked, then went to the house. Some of the boys went home shortly afterward but Click and I stayed until about 11 or 12 o'clock waiting on McGown. When we left we went straight home to Bronson and went to bed. I have no idea who it was that whipped Joe Horton that night, if he was whipped. He was not whipped by any of the people at McGown's so far as I know. I am sure he was not while I was there. The last I saw of him was when he started towards home about forty yards from the house. He said he was going home.''

The first bill of exceptions complains that the court erred in overruling his application for a continuance on account of the absence of Steve Connor, whom he desired as a witness. In the first place, we do not think the application shows proper diligence, and in the second place, the testimony of the witness would only have a tendency to impeach the State's witness, Joe Horton, and it is the rule that a continuance will not be granted to secure impeaching testimony. (Butts v. State, 35 Texas Crim. Rep., 364.)

The appellant offered to prove by Frank Ellison that when the prosecuting witness was drunk he became crazy and did not know anything until he became sober. There is no testimony that the witness Horton was drunk on the night he received the whipping, consequently the court did not err in excluding the testimony.

The State proved by the witness Jeff McGown: ''I examined the body of Joe Horton on Tuesday, August 1st, 1911. There were some bruises on his back and hips. The skin was broken on his left hip and thigh and back. There were some blue marks on him, too. I went with Joe Horton down back of the field near an old road and

examined the place where Joe Horton said he was whipped. I saw tracks and some switches there. Witness identifies switches in court as the same he saw on the ground where Horton was alleged to have been whipped and where he saw the tree and tracks. Joe took the switches away with him. I saw where a bunch limb had been cut from a tree Joe Horton told me that the defendants had whipped him. He said that all five of them including this defendant, had whipped him at the place where he showed me the switches, and said the switches he showed me were the ones they used to whip him.''

It was also proved by Mr. Barker: ''I am justice of the peace of precinct No. 1, Sabine County, Texas. I saw Joe Horton and examined him about the 2nd of August, 1911. I found his hips and thighs badly bruised and the skin was broken. There were considerable whelps on his body. The bruises were blue and puffed up.''

After this testimony had been admitted the defendant moved to exclude it on the ground ''that defendant was not present at the time of the examination, and it was made at a time too remote from the alleged assault.'' The record shows that the prosecuting witness was whipped on the night of the 30th of July, and these examinations took place in two and three days thereafter, and the time was not too remote, and the testimony as to the condition of his body was properly admitted in evidence.

The appellant offered to prove ''that during the spring or early summer of 1911 he heard some parties at LeMerl talk about whipping Joe Horton because he would not work and support his family,'' but the witness would have stated he could not recall who these persons were. The court did not err in excluding the testimony. To have rendered the testimony material and admissible he must have identified the persons in some way, and placed them in position where they could have made the assault.

There was no error in excluding the almanac as it would have proven no material fact and would not have tended to impeach the witness Horton. He had not testified that the moon was shining at the time he was whipped, but if he had, the testimony as to the hour he was whipped was not fixed so definitely as the almanac would have shown that the moon was down at this time. Horton testified that a match was struck and he saw the parties plainly.

The State also proved by Jeff McGown that at the time Horton went with him to the place where he was whipped and showed him the switches, etc., Horton told him who did the whipping, and named appellant as one of the persons. This was objected to on the ground that it was hearsay; that appellant was not present, and appellant had not sought to impeach Horton. It is true at the time this witness testified appellant had only laid predicates to impeach Horton, and perhaps the testimony was prematurely offered and admitted, but as appellant did, after having laid the predicates, follow this up by introducing the impeaching testimony, the testimony then be-

came admissible, and the fact that it was prematurely offered would present no grounds for reversal.

The court did not err in refusing the charge presenting the issue of alibi. There was no evidence showing that at the time the whipping was alleged to have taken place, that appellant was at another and different place. He in his testimony admits that he was with Horton at the place where Horton says they took hold of him and carried him to the place where he was whipped, and Horton positively identifies him as one of the men who did the whipping. Appellant denied, it is true, whipping Horton, but this issue was sufficiently presented in the charge of the court.

By reading the testimony hereinbefore copied it will be seen the issue of simple assault was not raised by the testimony, and the court did not err in not submitting that grade of the offense to the jury.

Appellant complains that the court erred in applying the law as to who are principals in commission of an offense, not that there is any error in such charge, but that such charge is not called for by the evidence. The evidence of Joe Horton herein copied shows the court did not err in that respect.

The court instructed the jury that "an assault becomes aggravated when the instrument or means used is such as inflicts disgrace upon the person assaulted as an assault or battery with a whip or cow hide; that it is not necessary that the instrument used should be a whip or cow hide, but any instrument that would inflict disgrace, such as a stick and switches, would be an aggravated assault." Appellant complains of this paragraph of the charge on the ground "that the statute specifically names the instruments which would inflict disgrace, a whip or cow hide, and does not include a stick and switches." The statute reads: "When the instrument or means used is such as inflicts disgrace upon the person assaulted, as an assault or battery with a cow hide or whip." It is thus seen this clause is broad enough to embrace any instrument with which a whipping may be administered, if done under circumstances which would inflict disgrace.

The judgment is affirmed.

*Affirmed.*