## WILLIAM A. GRAY V. STATE.

No. 26,093. December 3, 1952.
Rehearing Denied January 28, 1953.

*Fowler & Butts,* by *Charles D. Butts,* Odessa, for appellant.

*George M. Kelton,* County Attorney, Odessa, and *George P. Blackburn,* State's Attorney, Austin, for the state.

MORRISON, Judge.

The offense is aggravated assault; the punishment, two years in jail.

The information was in four counts, charging the assault to have become aggravated under different subdivisions of Article 1147, P. C.

The verdict of the jury was a general verdict of guilty. We must ascertain if the evidence is sufficient to support the conviction under any subdivision plead.

The first count, eliminating the formal parts, reads as follows:

". . . did then and there unlawfully commit an aggravated

assault in and upon M. E. Locker, in that, he, the said William A. Gray, called a newspaper reporter and an ambulance, before he committed said assault upon the said M. E. Locker, to be on the scene at the time he, the said William A. Gray, committed said assault upon the said M. E. Locker, and he, the said William A. Gray, then proceeded to commit said assault upon the said M. E. Locker in the presence of a newspaper reporter, a photographer, an ambulance driver and various other witnesses, thus causing said assault to be widely publicized and thus inflicting disgrace upon the said M. E. Locker, the person so assaulted."

Article 1147, P. C., reads, in part, as follows:

"An assault or battery becomes aggravated when committed under any of the following circumstances:

". . . .

"(5) When the instrument or means used is such as inflicts disgrace upon the person assaulted, as an assault or battery with a whip or cowhide."

This court has held that this subdivision does not limit the character of assault to the use of a whip or cowhide, but "that any means used in making an assault, the natural tendency of which is to disgrace the assaulted party, may be an aggravated assault, under said subdivision." Slawson v. State, 39 Tex. Cr. R. 176, 45 S. W. 575.

With the foregoing in mind, we now review the testimony.

Mrs. Copeland testified that shortly before the assault took place the appellant came into her place of business and said something about being mad at three men and that he was going to whip them; then he said, "We might as well have some publicity," following which he called an ambulance and a newspaper reporter and instructed them to come out to the Baash-Ross plant, where a man was going to be seriously injured.

One Williford, an ambulance driver, testified that he received a call asking him to come out to the plant, because a man was going to be seriously injured there. The witness testified that upon his arrival at the plant the appellant told him that he was the person who had called and then said, "The patient hasn't arrived yet;" that a few moments later the appellant

saw a Mr. Locker coming out of the plant and said, "There's the S. O. B. now." Williford stated that the appellant went over and knocked Locker down and continued to hit him on the head and upper portion of the body while he was on the ground. The witness testified further that he helped pull the appellant off the person he was assaulting; that there was blood all over Locker's face; that he put him in the ambulance, and that the appellant instructed him to carry Locker to the hospital and said he would pay the bill.

Ross Davis, a reporter on the Odessa American, testified that on the day in question he received a telephone call instructing him to come out to the Baash-Ross plant if he wanted some news, because a man was going to be seriously injured out there; that when he arrived the ambulance was already there, but nothing had happened. Davis stated that he saw the appellant intercept Mr. Locker, knock him down, and beat him as he lay on the ground. The witness stated that following the assault the appellant told him that he was the one who had called him to come out to the plant and that Mr. Locker was the first of three men he was going to whip. Davis testified further that his account of the assault received very wide publicity in the form of headlines and pictures on the front page of his newspaper for several days .

Bill Shoopman, a commercial photographer who accompanied Davis to the scene, testified that he took several pictures of the assault while it was in progress and that they were published in the Odessa American.

Other witnesses testified that there was a large crowd of people gathered at the scene of the assault.

Constable Davis testified that he arrested appellant after having searched for him for three days.

The injured party Locker testified that he had never had any trouble with appellant prior to the assault; that as he started to lunch the appellant stopped him and asked him why he had gotten fired; that he disclaimed any responsibility for appellant's discharge, but nevertheless appellant knocked him down and continued to beat him while he was on the ground.

Mr. Locker testified that there were a great number of people present at the scene and that the pictures of the assault

and news stories which appeared on the front page of the newspapers had caused him a great deal of embarrassment among his friends and fellow employees, and that he had been made the object of ridicule because of the same.

Appellant, testifying in his own behalf, said that he had concluded that Mr. Locker and two other men had been the cause of his losing his job and that he had determined to whip them because of this; that he accosted Locker; that Locker addressed him with an opprobrious epithet, and that because of this he hit him and would have "really let Locker have it" if he had not broken his hand while administering an early blow during the course of the assault. Appellant said that he had called the ambulance as much for his own protection as that of those he intended to castigate and that he had called the newspaper thinking that they would give him a break.

It is apparent from this record that the appellant deliberately set the stage to embarrass the injured party, knowing that his actions would inflict disgrace upon the person assaulted.

We find the evidence sufficient to support the conviction under Subdivision (5) of Article 1147.

No bills of exception appear in the record.

Finding the evidence sufficient and no reversible error appearing, the judgment of the trial court is affirmed.

### ON MOTION FOR REHEARING.

GRAVES, Presiding Judge.

The motion for rehearing merely reiterates the proposition advanced by appellant that Section 5 of Article 1147, Penal Code, limits a conviction thereunder to an assault with a whip or cowhide.

In the Slawson case from which we quoted in the original opinion, the accused was convicted under this provision of the aggravated assault statute, the charge being that he inflicted disgrace upon a female by pulling up her dress and inserting his finger in her vagina.

We also find that this court held that a conviction under

such subdivision of the article would be sustained where the assault was committed by striking one with the fist. See Keley v. State, 12 Tex. App. 245.

The same holding will be found in Caples v. State, 69 Tex. Cr. R. 394, 155 S.W. 267, wherein it is said:

"The statute reads: 'When the instrument or means used is such as inflicts disgrace upon the person assaulted, as an assault or battery with a cowhide or whip.' It is thus seen this clause is broad enough to embrace any instrument with which a whipping may be administered, if done under circumstances which would inflict disgrace."

We are not impressed with the idea that the statute limits a conviction under Sec. 5, of Art. 1147, supra, only to the use of a whip or cowhide, but it is intended to embrace any kind of an assault that inflicts disgrace upon the person assaulted.

Under the facts herein presented, as well as the law, we think this matter has been properly disposed of.

The motion for rehearing is overruled.