BOBBY OHLRICH AND FARRIS GRIER V. STATE

Nos. 28,007-28,008. February 29, 1956.

*Warren W. Bennett,* New Braunfels, for appellant.

*H. A. Triesch,* County Attorney, New Braunfels, and *Leon Douglas,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

Appellants were charged by separate complaints and informations with having committed an aggravated assault upon one Dan F. Summers, the ground of aggravation being that the assault was made with premeditated design and by the use of means calculated to inflict great bodily injury.

Appellant Ohlrich was alleged to have made the assault by the use of his fists, whereas the complaint and information against Appellant Grier alleged the means used to be by kicking with his foot.

By agreement the two cases were joined for trial and were tried before the court without a jury, and the appeals are prosecuted from the judgments finding both defendants to be guilty and assessing punishment against Appellant Grier at six months in jail and a $200 fine, and against Appellant Ohlrich at three months in jail and a fine of $100.

Having been jointly tried and the questions raised on the two appeals being the same, the cases will be disposed of jointly in one opinion.

The information in each case follows the allegations of the respective complaint and is drawn in the language of the applicable statute, Art. 1147, Sec. 8, V.A.P.C., and in the form suggested in Wilson's Criminal Forms, 6th Ed., Sec. No. 1478, Page 310.

(Prior to the amendment of Art. 1147 P.C. by the 54th Legislature, the section defining aggravated assault committed with premeditated design and by the use of means calculated to inflict great bodily injury was Section 9. By the amendment it became Section 8.)

An information drawn under Sec. 8 of Art. 1147, V.A.P.C.,

which alleges the assault to have been made with premeditated design and by means calculated to inflict great bodily injury, and alleges such means to be the use of the fists is not fatally defective. Keley v. State, 12 Tex. App. 245, cited with approval in Thompson v. State, 144 Tex. Cr. R. 321, 162 S.W. 2d 728, 730; and Gray v. State, 158 Tex. Cr. R. 214, 254 S.W. 2d 391.

For like reason we hold the information against appellant, Ohlrich, alleging the means used as kicking with his foot, to be sufficient.

The remaining ground for reversal is the contention that the evidence failed to establish a premeditated design or the use of means calculated to inflict great bodily injury, and the evidence is therefore insufficient to sustain the convictions.

Before discussing the evidence, we deem it appropriate to first consider what proof is required of the state in order to support a conviction for aggravated assault as defined by Art. 1147, Sec. 8, V.A.P.C., and what proof is not requisite to such a conviction.

In a prosecution for aggravated assault under Sec. 8 of Art 1147, V.A.P.C., the state is not required to establish that serious bodily injuries were inflicted. Branch's Ann. P.C., Sec. 1592, p. 937. The injuries actually inflicted are material, however, principally on the issue of whether or not the means used were calculated to and perhaps did inflict serious bodily injuries. Hodges v. State, 73 Tex. Cr. R. 378, 166 S.W. 512.

Ordinarily the use merely of the hands, fist or other members of the body, will not constitute an aggravated assault. Buchanan v. State, 13 S.W. 1000.

To secure a conviction under the provisions of Sec. 8 of Art. 1147, V.A.P.C., it was necessary that the state prove (1) that the assault was made upon the person named; (2) by the means alleged; (3) with premeditated design, that is with fixed purpose formed in the mind, and not upon a rash, unconsidered impulse, and (4) the means alleged and used was calculated to inflict great bodily injury.

"To meditate is to deliberate, and to premeditate implies an act or state of mind going before meditation or deliberation; it means to meditate or deliberate before concluding to do the deed; to contrive by previous meditation; thought of beforehand,

*any length of time, however short."* (Emphasis added.) Wharton on Homicide, 3rd Ed., page 162; Stanley v. State, 150 Tex. Cr. R. 173, 199 S.W. 2d 518.

The length of time is immaterial if the evidence shows a formed and fixed purpose and design. Hodges v. State, 73 Tex. Cr. R. 378, 166 S.W. 512.

Trial being before the court, all disputed facts must be resolved in favor of the judgment.

There is ample evidence to establish that on the same occasion both appellants made an assault upon Dan F. Summers, Appellant Grier by kicking Summers with his foot and Appellant Ohlrich by striking with the fist, as charged in the respective complaints and informations. We therefore review the testimony upon which we are called upon to determine whether or not there is sufficient evidence to support the trial court's finding that the assaults were premeditated and the means used were calculated to inflict great bodily injury. In determining these questions we must consider the evidence in the light most favorable to the state.

Summers and one Les Hester went into a Comal County Tavern for a beer. Summers introduced himself to some strangers and began to talk insurance to them, that being his business.

Appellant Grier approached this group and offered to bet on the World Series baseball game to be played the next day. Summers declined, saying he had no money, and continued conversing with the people to whom he had introduced himself.

Appellant Ohlrich joined in the conversation and Summers twice requested that he remain quiet or "shut up;" Ohlrich then struck Summers in the face causing him to slide off his chair.

During this time appellant Grier was "molesting" and "justling" Hester who, seeing the assault made upon Summers, left the cafe stating that he was going to call "the law" and have appellants arrested.

As Hester went out the door, appellants started after him.

Summers testified that he then left the cafe and as he came out was hit by Appellant Ohlrich upon the forehead. "That the

Defendant evidently wore a ring on his fingers, or had some other instrument in his hand, because the blow cut his skin, leaving a gash which took eight stitches to sew up. That the same was very painful and blood was streaming down his face. That the defendant Ohlrich continued hitting the witness and while trying to protect himself, the witness and Ohlrich fell to the ground. That the defendant, Ohlrich, got on top of the witness and continued hitting him in the face, mouth and other parts of the body, causing several abrasions of the skin on his face, cutting the inside upper lip of the witness, and causing severe bruises all over the face. That while this witness was on the ground and the defendant, Ohlrich on top of him, the defendant Grier kicked the witness in the head, causing the skin to break, which required several stitches to sew up. That defendant Grier kicked him in the ribs and all about the body. After the witness managed to shake off the defendant Ohlrich and started to run away the defendant Grier again kicked him 'in the seat of my pants' and so hard that I had an involuntary discharge or bowel movement. It hurt severely. After managing to escape I joined my friend Hester who had gone across the highway and called the law. I saw that he too was beat up and bleeding. We went to Austin and went to a doctor who sewed up my wounds. I was sore and bruised all over, and I missed five days work because of the injuries I had received. I had a long cut on my forehead and another in the back of my head which the doctor attended to that night. I was bruised so badly in my side that I had to stay home from work for five days. My upper lip was cut in the inside, and the side of my face was swollen all over.' "

In view of the testimony set out, we would not be warranted in disturbing the trial court's finding that the assault which occurred after Summers and his companion had left the cafe to report the first assault to officers was premeditated, and that the means used by appellants were calculated to inflict serious bodily injury.

The judgments are affirmed.