**Lee Allen BUSTER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 43978.**

Court of Criminal Appeals of Texas.

June 29, 1971.

Rehearing Denied Oct. 13, 1971.

Melvyn Carson Bruder, Dallas (on appeal only by appointment), for appellant.

Henry Wade, Dist. Atty., John B. Tolle, Harry J. Schulz, Jr., W. T. Westmoreland, Jr., Edgar A. Mason, Robert T. Baskett, and James S. Moss, Asst. Dist. Attys., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This appeal is from a conviction for the offense of robbery; the punishment was assessed by the court at twenty-five years.

Appellant's two grounds of error are: (1) that the trial court erred in admitting testimony concerning an extraneous offense, and (2) in not charging the jury on lesser included offense.

Willie Coleman testified that he and his cousin, Virgie Mae Coleman, were walking along the street in the vicinity of 4th and Dallas Streets, in Dallas, at approximately 9:30 P.M. on December 20, 1968, when they encountered four males standing outside a car. One of them ·approached the witness and: "He said, 'Give me a match,' and I said, 'I don't have one,' and I turned to walk off and he said 'Get in the car,' so I turned and walked toward the car and he rammed a gun in my back and he said 'Walk on and don't look back' * * *" He stated that he was ordered to sit in the back seat of the car between two of the men and Virgie Mae was ordered to sit in the front seat between the other two. He stated that the appellant was sitting to his right in the rear seat. After all got into the car they went for a ride and the man sitting on his left side started hitting him over the head with a gun (this being the one that had ordered him into the car at gunpoint). He stated that the driver of the car handed appellant a knife and said "Don't shoot the man because they might hear the gun," but that the appellant did not take the knife. That the car was stopped and appellant hit him "across the face with the back of his hand" and took three dollars from his pocket. He was ordered to remove all his clothes except his shorts and socks. That they also took money and a wristwatch from Virgie Mae. He stated that one of them then put a gun to his ear and said "I'm going to blow your brains out," and then he testified: "I kept asking Buster (appellant) 'Don't let him kill me,' and finally Buster said, 'Oh, man,' said 'don't kill him. We have his shoes and pants and shirt,' and he said, 'Just let him be.' And so they took off taking Virgie Mae on down the street and I took off and they went down three or four houses and started to get out—"

Virgie Mae Coleman testified and described the incidents heretofore related by Willie Coleman's testimony. Also, she stated that one of them told Willie and her, "If you'll be good *like the one we got awhile ago,* we'll let you go and not be hurt." (Emphasis supplied) There was no objection to this answer; prior thereto, there was an objection to "Narrative Testimony," hence no error is shown. But there is more.

We note that no objection was made to the court's charge which gave no limiting instruction regarding extraneous offenses, nor was such a charge requested.

Further, the alleged extraneous offenses were testified to by the appellant:

"Q. Do you know whose car it was?

"A. I guess it belonged to the man that was setting in it.

"Q. Was he driving it?

"A. Well, when we first got out of the car, he was under the steering wheel and Thomas is still talking to the other man and White goes up to him and we goes on back and then White gets under the steering wheel and the guy gets in the middle.

"Q. Well, then what happened?

"A. White left driving and Rivers and myself were in the back.

"Q. The guy was the man that owned the car?

"A. Yes sir.

"Q. Was he an old man or a young man?

"A. I guess old.

"Q. He's about seventy-two, isn't he?

"A. Well, I don't know.

"Q. All right, he got this man in the middle and you two were in the back. All right, where did he go from there?

"A. We went back on Oakland and went back in the vicinity of Corinth and Dallas when the people (the Colemans) got in the car.

"Q. Was the old man in the car when the people got in the car?

"A. No sir, they had put him out.

"Q. Who put him out?

"A. Cline.

"Q. How did he put him out?

"A. He tied his hand.

"Q. You were with them when that happened?

"A. Yes sir."

First, we hold that evidence of these acts was admissible as part of the res gestae of the robbery offense. Nash v. State, 467 S.W.2d 414; Smallwood v. State, 464 S.W.2d 846.

Secondly, by his own testimony, appellant predicated his defense upon the fact that he saw something, but did not participate in the robbery or strike the complaining witness. He also testified that he had no intent to rob. By placing his intent in issue, evidence of the robbery offense committed minutes earlier was admissible. Blankenship v. State, Tex.Cr.App., 448 S.W.2d 476; McCollum v. State, 130 Tex. Cr.R. 105, 91 S.W.2d 1067; Overstreet v. State, 68 Tex.Cr.R. 238, 150 S.W. 899.

Appellant's first ground of error is overruled.

The record contains a requested charge on aggravated assault and simple assault which was filed on May 27, 1969, the same date the court's charge to the jury was filed. However, the record is silent as to whether this was either presented to or ruled on by the trial judge. This is a requirement to preserve error for review before this court under Article 40.09, Sec. 9, Vernon's Ann.C.C.P.

In any event, the appellant testified and persisted in his defense of not having anything to do with the complaining witness. He testified that he did not know witness Willie Coleman or Virgie Mae Coleman and did not know why they were in the car. He maintained that he had no plans to rob anyone and had not conspired to commit a robbery, and that he did not participate in any of the beatings administered. He said that he told the person doing the beating to stop because it could give the witness Willie Coleman a concussion of some kind. He stated that he merely rode as a passenger in the car, and that he did not take anything from either of the Colemans. He testified that he was drunk as he had been drinking for two days; that he had passed out and was

**890** ■ 

sleeping when the kidnapping took place and the Colemans were forced into the car. He was awakened when Willie Coleman stepped on his feet.

Under this evidence, no error was committed by not charging on lesser included offenses. Gonzales v. State, Tex.Cr.App., 449 S.W.2d 49; Bell v. State, Tex.Cr.App., 411 S.W.2d 725; Brooks v. State, 144 Tex.Cr.R. 206, 161 S.W.2d 1069.

Finding no reversible error, the judgment is affirmed.