Lucille GOWANS, Appellant,

v.

The STATE of Texas, Appellee.

No. 49511.

Court of Criminal Appeals of Texas.

April 16, 1975.

Rehearing Denied May 21, 1975.

Howard B. Law, Dallas, for appellant.

Henry Wade, Dist. Atty., Gary Love, Dan Pitzer and Mike Smith, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty. and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

Appellant was convicted of aggravated assault on an officer; punishment was assessed at a two hundred dollar fine and forty-six days in jail.

■ Appellant's brief was filed in the trial court approximately one and a half months after it was due, and no request for an extension of time appears in the record. Art. 40.09(9), Vernon's Ann.C.C.P. A review of the record does not reveal unassigned error which in the opinion of this Court should be reviewed in the interest of justice. Art. 40.09(13), V.A.C.C.P.

■ The concurring opinion asserts that appellant's late *brief* should be considered in the interest of justice. Article 40.-09(13), V.A.C.C.P., cited in the concurrence for that proposition does not mention considering a *brief* in the interest of justice. It provides that this Court shall review "any *unassigned error* which in the opinion of the Court of Criminal Appeals should be reviewed in the interest of justice." (Emphasis added.) We find no such error.

The judgment is affirmed.

OPINION CONCURRING IN THE RESULTS BUT DISSENTING TO THE MANNER OF DISPOSAL

ROBERTS, Judge.

The majority dispose of this case under Art. 40.09, V.A.C.C.P., because of late filing of the brief. I agree with the result, but wonder if we are not holding appellant's feet to the fire when we fail to do so with the State and the trial court. We must have rules, but they should be uniformly applied. The State of Texas *habitually* files briefs late, but they are considered by this Court. Is this in compliance with the statutes of this State? Art. 40.-09(10), V.A.C.C.P., provides that the State's brief shall be filed "[w]ithin thirty days after defendant files his brief . . . or within such additional period as the trial court in its discretion may in its discretion authorize . . . ." Therefore, I would consider the brief of appellant in this case in the interest of justice. Art. 40.09(13), V.A.C.C.P. See, e. g., Nichols v. State, 511 S.W.2d 269, 270 (Tex. Cr.App.1974).

The record reflects that on March 11, 1973, three plainclothes Dallas police officers, including the complainant Ronald Parrish, went to the appellant's home to arrest her husband and son. Appellant met the officers at the door and told them that neither her husband nor her son was at the house.[1] In addition, the appellant disputed the officers' right to arrest the two men.

As the officers left the house, they noticed a man peering through a window from inside the house. The man in the window resembled a picture the officers had of appellant's husband, Lonnie Gowans, Sr.

After determining that the warrants for the two men were still outstanding, the officers returned to the house with two uniformed officers and knocked on the door.

1. At trial, the appellant admitted that her husband was in fact at the house at this time.

A voice inside asked who was there, and after Officer Parrish answered that it was the police, the officers heard what seemed to be movement away from the door. At this point, the officers decided that they would have to break the door down to enter the house. See Art. 15.25, Vernon's Ann.C.C.P.

After breaking the door, the officers entered the house yelling "Police" loudly. They found Lonnie Gowans, Sr., inside the house and arrested him. On searching through the house for appellant's son, Lonnie Gowans, Jr., Officer Parrish encountered the appellant. Parrish testified that the appellant was pointing a gun at him, seemingly about to pull the trigger. According to Parrish, he knocked the gun from appellant's hand and subdued her.

Appellant testified that she did not point the gun at Parrish. She admitted that she attempted to load the pistol when she heard the door being broken, but insisted that she put the gun down when her daughter told her that it was policemen who were breaking down the door. This occurred, according to appellant, immediately before her encounter with Parrish.

Appellant's first ground complains of the trial court's failure to submit four of her requested charges and portions of two others. This ground of error is clearly multifarious and therefore violates the requirements of Art. 40.09(9), V.A.C.C.P. However, since it is possible to distinguish the issues raised by each of the requested charges, I would review the ground nonetheless.

Appellant's first requested instruction would have charged the jury on self-defense, while the refused portion of appellant's third requested charge went to the issues of self-defense and defense of property. Since the appellant denied pointing the pistol at Officer Parrish, these issues were not raised, and no charge was required. Brackenridge v. State, 489 S.W.2d 287, 298 (Tex.Cr.App.1973); Heath v. State, 375 S.W.2d 909, 911 (Tex.Cr.App. 1964). Cf. Poage v. State, 507 S.W.2d 789, 791 (Tex.Cr.App.1974). For the same reason, the trial judge was justified in refusing appellant's requested charge on simple assault. Caples v. State, 69 Tex.Cr. 394, 155 S.W. 267, 269 (1913); Buster v. State, 470 S.W.2d 887, 889–890 (Tex.Cr. App.1971).

In her other refused charges, the appellant sought to have the court instruct the jury on the alleged use of excessive force by Parrish, and on the alleged failure of Parrish to obtain a warrant or give proper notice of his authority to arrest. An examination of the record reveals that all of these issues were properly presented to the jury in the court's charge. No error is shown. See, e. g., Aranda v. State, 506 S. W.2d 221, 225 (Tex.Cr.App.1974).

Appellant's first ground of error is overruled.

In appellant's remaining two grounds of error, she argues that a question asked of the appellant by the prosecutor constituted reversible error. The record reflects the following exchange:

"Q . . . Did you ever tell anyone that represented themselves as Police Officer's [sic] that the, 'The next cop that came out there, you were going to kill'?

"A No, I did not.

"MR. LAW [Counsel for appellant]: Your Honor, I am going to object to him asking that question. It's my recollection, and to the best of my memory it's not in evidence and we think it's bad faith for him to propose a question that is not in evidence.

\* \* \* \* \* \*

"THE COURT: Well, now that I do consider in bad faith . . . ."[2]

---

2. It is undisputed that the prosecutor's comment injected new matter not in evidence.

The court sustained the appellant's objection and instructed the jury not to consider either the prosecutor's question or the appellant's answer. Appellant's motion for mistrial was denied.

Without discussing whether appellant's objection was timely, I would overrule these grounds of error.

It is well settled that:

"An error in asking an improper question or in admitting improper testimony may be generally cured or rendered harmless by a withdrawal of such testimony and an instruction to disregard the same except in extreme cases where it appears that the question or evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds." White v. State, 444 S.W.2d 921, 922 (Tex.Cr.App.1969).

See also Mistrot v. State, 471 S.W.2d 831, 833 (Tex.Cr.App.1971); Hartman v. State, 507 S.W.2d 553, 556 (Tex.Cr.App.1974).

In Sensabaugh v. State, 426 S.W.2d 224, 227 (Tex.Cr.App.1968), we held:

"The Court of Criminal Appeals rarely reverses a conviction of crime solely because an improper question was propounded to the defendant as a witness. To cause reversal the question must be obviously harmful to the defendant."

The case now before us presents a somewhat distinctive situation in light of the comment by the trial judge that the prosecutor's question was "in bad faith."[3] This is especially true when we consider the language from some of this Court's previous opinions, which seem to imply that a showing of bad faith is sufficient to bring about a reversal on such an issue. See, e. g., Hartman v. State, supra, 507 S.W.2d at 556. Solis v. State, 492 S.W.2d 561, 564 (Tex.Cr.App.1973).

It is true that on several recent occasions this Court has reversed where the bad faith of the prosecutor was manifest. See Stein v. State, 492 S.W.2d 548 (Tex. Cr.App.1973); Renn v. State, 495 S.W.2d 922 (Tex.Cr.App.1973), and Boyde v. State, 513 S.W.2d 588 (Tex.Cr.App.1974). In each of those cases, however, the harm to the defendant and the prejudice to his rights were just as evident as was the improper conduct of the prosecutor; likewise, in each of the cases cited the prejudicial actions and comments of the prosecutor occurred frequently during the course of the trial, often in defiance of the rulings of the trial court.

No such pattern of prejudicial conduct confronts us in this case. Instead, we have an isolated instance of unsworn testimony from the prosecutor which is not unlike that found admissible in Hartman v. State, supra.

In *Hartman,* this Court held that it was permissible in a murder prosecution for the State to ask leading questions about antecedent threats made by the defendant against the deceased, since the threats, if made, were admissible to show intent and malice. Since such threats are equally admissible in a case of aggravated assault, see Decker v. State, 58 Tex.Cr. 159, 124 S.W. 912, 913–914 (1910); 6 Tex.Jur.2d Assault and Battery, Sec. 91, page 322, I would hold that the prosecutor's question was not so prejudicial that it could not be cured by the instruction of the careful trial judge.

I also conclude that the trial court's comment as to the bad faith of the prosecutor was intended only as a stern admonishment and not as a determinative finding that would warrant reversal. Support for this conclusion is found not only in the record as a whole, but also in the denial by the court of appellant's motion for new trial, and finally in the failure of the court to grant a new trial after submission of

3. At the hearing on the motion for new trial, the prosecutor testified that his question was based on an out-of-court statement made to him by one of the officers.

the briefs, pursuant to Art. 40.09(12), V. A.C.C.P.

I would affirm.[4]

ONION, P. J., joins in this opinion.

---

4. In doing so, I imply no retreat from the sound holdings in *Stein, Renn,* and *Boyde,* supra. See Koller v. State, 518 S.W.2d 373 (Tex.Cr.App.1975).