WILL REED v. THE STATE.

No. 13826. Delivered March 11, 1931.

The opinion states the case.

*George L. Huffman,* of Marshall, for appellant.

*John E. Taylor,* Co. Atty., and *Benjamin Woodall,* Asst. Co. Atty., both of Marshall, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is theft of cattle; the punishment, confinement in the penitentiary for three years.

John Murry and appellant lived on adjoining places. Murry lost two head of cattle. Upon making a search for them he came up from the back of appellant's premises and saw appellant in the doorway of one of his stables. He asked appellant if he had seen his cattle. Appellant replied that he had seen them down the railroad track. Upon looking into the stable Murry saw his two head of cattle. They had been killed. Appellant testified that one Elbertis Fisher, who ran a butcher shop, brought the cattle to his place and that he had helped him kill them. He said that he had nothing to do with the original taking of the cattle. It appears that Fisher was later convicted for the theft of the cattle. Prior to his conviction, he and appellant paid Murry fifty dollars each for the two head of cattle. This settlement was made after Murry had found his property in the possession of appellant. Witnesses who were present at the time the settlement was made, as well as Murry, the injured party, testified that appellant admitted that he had stolen one of the cattle. Appellant denied making such admission and testified that he paid Murry to save a prosecution, inasmuch as he was afraid. His testimony was to the further effect that Fisher ran away from the stable on the occasion Murry discovered the cattle.

It is recited in bill of exception No. 4 that counsel for appellant, in his argument to the jury, referred to the fact that A. J. McLynn and wife were present when appellant was alleged to have admitted that he stole one of the cattle, and that notwithstanding the fact that they had been summoned by the State, they were not placed on the witness stand. It is further recited in the bill that the county attorney, in his closing argument, in answer to appellant's argument, replied that if said witnesses had been placed on the stand their testimony would have been very damaging to appellant. The bill further reflects the fact that the county attorney challenged counsel for appellant to agree that the pro-

ceedings be interrupted and that said parties be placed on the stand. Objection was timely interposed. Appellant submitted his special charge in writing, wherein the jury would have been advised not to consider the argument of the county attorney for any purpose. The court over-ruled the objection, and declined to give the charge. The qualification appended to the bill of exception reads as follows: "The argument com-plained of was made by the State's attorney, but same was provoked and invited by the argument of defendant's counsel as above set out and made in answer thereto."

Bill of exception No. 5 recites that the county attorney, in his clos-ing argument to the jury, stated: "If the witnesses A. J. McLynn and his wife were to testify in this case the testimony of these witnesses would seal the doom of this defendant." Objection to the argument was timely interposed, and a special charge in writing requested by appellant, where-in the jury would have been advised not to consider the argument of the county attorney for any purpose. The court overruled the objection and declined to give the charge. The bill is qualified in the same manner as bill of exception No. 4.

We are constrained to hold that the argument reflected by the fore-going bills of exception necessitates a reversal. We do not understand that the argument made by appellant's counsel warranted the county attorney in stating to the jury that the testimony of the witnesses would have been damaging to appellant, and that if they had taken the stand their testimony would have sealed his doom. The effect of such state-ments was to advise the jury that the witnesses had stated to the county attorney that appellant admitted in their presence that he had stolen one of the cattle. In short, the county attorney, in argument, supplied testi-mony upon a controverted issue. Even if he had been a witness he could not have given such testimony. The State earnestly insists that under the facts presented by the record, the argument does not present rever-sible error. It is said in the brief that the testimony of guilt is plain, and, further, it is urged that the holding of this court to the effect that an argument should not be held reversible error, except in extreme cases where it is manifestly improper, harmful and prejudicial, or where a mandatory provision of the statute is violated or some new and harmful fact injected in the case. should prevent a reversal of this case. Vine-yard v. State, 96 Texas Crim. Rep., 401, 257 S. W., 548. It is true that the evidence of guilt is amply sufficient. It is also true that appel-lant denied his guilt, and testified that he had not admitted in the presence of the witnesses that he had committed the offense. Applying the test announced in Vineyard v. State, supra, we are unable to escape the conclusion that the argument was improper, harmful and prejudicial. The statement tended to support and corroborate the testimony of the witnesses touching appellant's admission of guilt. The court made no

attempt to withdraw its effect. It went to the jury to be considered by them in determining the issue of guilt. In Ballard v. State, 97 Texas Crim. Rep., 455, 262 S. W., 85, the appellant's counsel commented on the failure of the State to prove by one of its witnesses that deceased was not drunk a few minutes before the homicide. Replying to such comment, State's counsel used language as follows:

"You asked why we did not prove the deceased was not drunk by the witness Bull. I say to you now, sir, we will prove it now. He will swear to it all right. If you will agree to it, we will prove it now. Will you agree?"

In holding that the argument constituted reversible error, Judge Morrow used language as follows:

"We think that in so doing he gave to ,the jury his own testimony, hearsay in its nature, touching what he might have proved by Bull. The State, having used Bull as a witness and proved by him relations with the deceased which suggests that he might have been able to throw light upon the condition of the deceased immediately before the homicidé, refrained from asking Bull whether or not the deceased was drunk. The failure to make this inquiry was a legitimate subject of comment by counsel for the appellant. The declarations by the State's counsel as to what he could have proved by Bull was an improper means of meeting a proper argument of his adversary."

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.