EARL RANKIN V. THE STATE.

No. 21030.  Delivered May 8, 1940.

The opinion states the case.

*Xavier Christ,* of Port Arthur, and *David E. O'Fiel,* of Beaumont, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, Judge.

The offense is maiming; the punishment, confinement in the penitentiary for three years.

The injured party, Willie Johnston, testified, in substance, as follows: On the 24th of June, 1939, appellant came to witness' beer parlor and began playing the Victrola. A dispute arose between appellant and a woman over the selection of a record. Appellant began cursing and the witness ordered him out of his place of business. Instead of complying with the command of the witness, appellant struck him with a bottle and knocked him down. Someone picked the witness up. At this juncture we quote from the testimony of the witness as follows:

"After they picked me up I got to my feet, and I walked down to the counter, and I said to Joe Mitchell, 'I guess it is time to close' something like that, and in a few minutes afterwards Joe Mitchell said 'look out nigger—don't throw that bottle' I ducked my head, and went to look up, just as I went to look up he struck me in the eye. I know who struck me. Earl Rankin is the one that hit me. He hit me with a bottle. He hit me with a flask; it was about a pint bottle that he hit me with. I couldn't tell you just what he did do when he hit me. The reason that I couldn't tell you what he did after he hit me with that bottle is because my eye sight was gone. After I was hit in my eye with that bottle they turned me around and set me down; I sat there a few minutes, and then they carried me to the hospital. My eye is out now. They had to take my eyeball out; they took it out the next day. Doctor Harrell is the doctor who took my eye out."

Several witnesses for the State corroborated the injured party's version of the transaction.

Appellant admitted that he got into an argument with a woman about the Victrola. It was his version that she cursed him, and that, without provocation the injured party, who was standing nearby, hit him. He then hit the injured party and they grabbed each other and fell to the floor. Someone in the beer parlor began to throw bottles. Further, appellant testified that the fight lasted about two and one-half minutes. We quote from appellant's testimony: "This Leverne boy came up there to separate us, but when the bottles started coming he got back. When the bottles started coming I jumped up and ran out of the place." Again, appellant testified that he at no time struck the injured party with a bottle.

Appellant's affirmative defense to the effect that someone else struck the injured party with a bottle was properly submitted to the jury.

It is appellant's contention that the evidence is insufficient to show he wilfully and maliciously and by premeditation and design put the injured party's eye out. We are unable to agree with this contention. Art. 1166, P. C., reads as follows: "Whoever shall wilfully and maliciously cut off or otherwise deprive a person of the hand, arm, finger, toe, foot, leg, nose or ear, or put out an eye or in any way deprive a person of any other member of his body shall be confined in the penitentiary not less than two nor more than ten years."

The authorities define the word "wilful" as follows: "A wilful act is one committed with an evil intent, with legal malice, without reasonable ground for believing the act to be lawful, and without legal justification. A malicious act is one committed in a state of mind which shows a heart regardless of social duty, and fatally bent on mischief; a wrongful act intentionally done, without legal justification or excuse."

See 29 Texas Jurisprudence 441, and Bowers v. State, 7 S. W. 247. In 29 Texas Jurisprudence 441, it is said: "It is thus seen that the words 'wilful' and 'malicious' have the same legal meaning in cases of this character as do the words 'malice aforethought' in murder cases. But a specific intent to maim need not be proved. 'If the means used in the commission of the offense is such as would, in the manner used, ordinarily result in maiming the law presumes that the intention was to maim, . . . without regard to the knowledge of the party using

such means as to whether or not the same were calculated to maim'."

We quote from Davis v. State, 2 S. W. 630, in which it is shown that the accused was convicted of the offense of maiming:

"It is insisted by counsel for the defendant that the word "willfully," as used in this statute, means more than it has been held to mean in other cases; that it means, not only that the act causing the injury was intentional, but that the party inflicting the injury intended the probable result of the act; in other words, that it means a specific intent on the part of the person inflicting the injury to *maim* the person injured, or that the person inflicitng the injury must have known at the time that the means used by him were calculated to *maim*.

"If this had been a prosecution for assault with intent to maim, the specific intention to maim would be essential, and it would have been error if the court had failed to so instruct the jury; but when, as in this case, the maiming was actually effected, if the act was committed with evil intent, with legal malice, without reasonable ground for believing it to be lawful, and without legal justification, it was willful and malicious, whether or not it was committed with a specific intent to maim. And if the means used in the commission of the offense is such as would, in the manner used, ordinarily result in maiming, the law presumes that the intention was to maim. (Pen. Code, Art. 50,) without regard to the knowledge of the party using such means as to whether or not the same were calculated to maim. In our opinion, the court charged the law of this case fully, fairly, and correctly, and did not err in refusing the special charges requested by the defendant."

In Keith v. State, 232 S. W. 321, this Court, speaking through Judge Lattimore, used language as follows: "Appellant excepted to the court's failure to charge on the question of his intent and premeditated design. In the Davis Case, 22 Texas App. 50, 2 S. W. 630, and the Key Case, supra, we held that if the maiming was actually committed, and was with evil intent and without justification, same would be punishable whether or not there was any specific intent or premeditated design to maim. In the instant case the trial court defined a willful act as one done with evil intent, and told the jury that malice denoted a wrongful act intentionally done without just cause or excuse. This we think sufficient upon the question of intent under the facts of this case. Bowers v. State, 24 Texas App. 549, 5 Am. St. Rep. 901, 7 S. W. 247; Pool v. State, 59 Texas Crim. Rep. 482, 129 S. W. 1135."

See also Key v. State, 161 S. W. 122.

According to the testimony of the State, appellant deliberately struck the injured party in the eye with a bottle. The result was that the eye of the injured party was put out and had to be removed by a physician. We think the jury were warranted in concluding that the means used by the appellant, in the manner used, would ordinarily result in maiming. Stated in another way, the jury were warranted in concluding that striking a person in the eye with a bottle with the force used by the appellant would ordinarily result in putting the eye out.

Giving effect to the principles controlling, we are constrained to hold the evidence sufficient.

In passing sentence the court failed to take note of the Indeterminate Sentence Law. See Art. 775, C. C. P. The sentence is reformed in order that it may be shown that appellant is condemned to confinement in the penitentiary for not less than two years nor more than three years.

As reformed, the judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.