## Bernice Lee v. State

No. 28,441. December 12, 1956.
Appellant's Motion for Rehearing Overruled
(Without Written Opinion) February 20, 1957.

*Perry O. Barber*, Colorado City, for appellant.

*Leon Douglas*, State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is maiming; the punishment, three years.

Animosity had existed between the injured party "Lady" and the appellant "Chicken" for some time prior to the night in question. Seven years before, they had a fight in an alley in which Lady claims that she was cut and Chicken's nose was bitten. The appellant contended that their animosity grew out of her husband's attentions toward the injured party and claims that she had seen them together in another city a few nights before that charged in the indictment. The injured party denied any familiarity or infidelity with the appellant's husband. Both husbands testified. Lady's husband denied any knowledge of her infidelity to him, and the appellant's husband testified that he had been having an affair with Lady and that all the ill will between the women was "over him."

This brings us to the night of the assault herein charged, which cost the injured party the vision in both of her eyes.

Lady testified that she and her eight children went to a Little League ball game; and, as she was outside her automobile holding one of the younger children so that he might be "excused," one of the older children warned her, "There comes Miss Chicken. She has got something behind her." Lady testified that she returned the small child to the automobile, picked up a hammer from the floorboard, and prepared to meet Chicken, who was approaching her; but that before she could do anything the appellant threw a liquid into her face, and she, in turn, threw the hammer in the appellant's direction. She stated that another of her children again warned her, "Here she comes, she has got a knife," and that she then fled some three blocks to the home of a Latin-American, who carried her to the hospital, and that she was carried the next day to a specialist but that his efforts in her behalf had been to no avail and that she was completely blind.

The indictment was in three counts, two charging that the liquid thrown was lye, and the third charging that it was a solution "the contents of which is unknown to the grand jurors."

Certain scrapings were taken from the injured party's automobile and submitted to the Department of Public Safety for chemical analysis. Chemist Charles Smith testified that he found the specimen to be "a compound containing sodium" and,

further, "I was unable to specifically identify this as sodium hydroxide, which is common household lye. It only had the properties that I mentioned, which are suggestive of lye."

A member of the grand jury testified that they had been unable during their deliberations to determine definitely what the solution was which was thrown.

Dr. Crymes testified that on the night in question he received a telephone call from the appellant in which she inquired "what was good for a lye burn," saying that some had "splattered back on me." He stated that shortly thereafter he went to the hospital, where he administered first aid to the injured party, and expressed the opinion, though he conducted no tests, that the solution which had been thrown into the injured party's eyes was lye.

All three counts of the indictment were submitted to the jury, and they returned a general verdict; and no question of election has been raised.

The injured party was supported in her testimony by two of her children.

The appellant testified to quite a different state of facts. She stated that, as she sat in her automobile at the ball game, Lady approached her automobile and began to assault her with a hammer, stating that she was going to kill her.

She stated that on that morning she had prepared a solution of Saniflush and water in order to clean a stove belonging to her employer, that some was left over, and she placed it in an old oil can and put it in her automobile to take home, but that when she got home she forgot to take it out of the automobile.

Appellant testified further that Lady hit her on the arm, in the mouth, and on the back of the head with the hammer; that she finally got hold of the hammer with her left hand, and, as Lady pulled her out of her automobile by the hair, she picked up the can of Saniflush from the floorboard and "I just throwed it in her face, can, paper sack and all," at which time Lady relinquished her hold on the hammer, and she got in her automobile and drove out in the country to the home of some of her relatives. Appellant offered no eye witnesses to the affray and stated that she had been unable to locate any.

The jury resolved the disputed issue of self defense against the appellant, and we find the evidence sufficient to support their verdict.

The facts will be more fully discussed in connection with the bills of exception so ably argued by counsel and in the order presented in his brief.

In the court's charge, the jury was instructed that in order to convict they must find beyond a reasonable doubt that appellant wilfully and maliciously threw into the face of the injured party a solution of lye or other solution, the contents of which were unknown to the grand jury, and that said solution did put out the sight of her eyes.

In this connection, the jury was instructed that if they found beyond a reasonable doubt that the means used by appellant were such as would, in the manner used, ordinarily result in maiming or destroying the sight of the eyes, the law presumes that the intention was to maim without regard to the knowledge of appellant in using such means, as to whether or not the same would be calculated to maim or destroy the sight of the eyes.

The court's charge further instructed the jury to acquit if they found or entertained a reasonable doubt that appellant threw the solution while under reasonable apprehension or fear of death or serious bodily injury from an attack by the injured party.

No complaints, by objection, exceptions or requested charges, were lodged against the charge save that shown by bill of exception No. 1.

This bill complains of the refusal of the trial court to grant her requested charge No. 1, which told the jury to acquit if they found that "throwing such solution into the eyes of the injured party was accidental." She contends that such a charge was required because the appellant testified that when she threw the liquid she did not intend to put out the eyes of the injured party.

Appellant relies upon a number of murder cases as authority for her contention that the appellant's testimony raised the issue of accidental maiming. In the main, they are those cases which involve the alleged accidental discharge of a firearm,

and, we have concluded, under the facts here before us, have no application to the case at bar. When the appellant, who had used the fluid contained in the can that morning and certainly knew its caustic properties, "throwed it in her face," she will be presumed to have realized the consequences of her act. The mere statement that she did not intend to put out the injured party's eyes does not raise the defense of accident. Her defense here is that she did not intend the consequences of the act, which is something else again from a claim that she did not intend to commit the act.

Bill of Exception No. 2 involves newly discovered evidence. At a part of the bill, there is the testimony of one Ellis given on the motion for new trial. He merely states that he saw two colored women meet near the appellant's automobile, saw the injured party stagger, turn and run. He did not see any assault, any hammer or any can. We cannot bring ourselves to conclude that the addition of his testimony would have shed light on the disputed issues which were controlling in this case.

Bill of Exception No. 3 sets forth the appellant's proof as to the infidelity of her husband with the injured party and then quotes from the prosecutor's argument in which he *submitted* to the jury his contention that the important issue for them to decide was what happened on the night in question and that the court had not told them to acquit if they found that a love affair had been taking place. The objection was that this was an incorrect statement of the law.

We have concluded that state's counsel was arguing from the court's charge, which had been read to the jury, and we fail to perceive any error in the argument.

In Bill of Exception No. 4, the prosecutor argued to the jury that, if the injured party had hollered "I am going to kill you," as the appellant had testified that she did, some of the spectators at the ball game would have heard her. The objection was that such was not a reasonable deduction. We do not agree.

In Bill of Exception No. 5, the prosecutor argued that, if the appellant had sustained the injuries which she claimed she did as the result of being hit with a hammer, she would have called her kinsman from out in the country to support her testimony since the doctor who examined her at the hospital did not do so. The objection was that the kinsman could have been called by the state as well as the appellant.

Appellant relies, among other cases, on Reed v. State, 117 Texas Cr. Rep. 588, 36 S.W. 2d 526. In that case, the prosecutor stated that if some missing witnesses had been present at the trial, they would "have sealed the doom of this defendant."

There is a vast distinction between giving unsworn testimony, as was done in the Reed case, and commenting on the failure to produce a witness, as was done here. See Hines v. State, 160 Texas Cr. Rep. 284, 268 S.W. 2d 459.

Bill of Exception No. 6 related to the prosecutor's argument in which he discussed the testimony of the appellant's reputation witnesses. He pointed out that only two stated that their knowledge of such reputation had been acquired from hearing others discuss it, while the remainder had stated that their opinions were based on their personal contact with the appellant. The objection was that this was improper argument and that reputation was a question of law and not of fact, and not a question of the opinion of the prosecutor.

Reliance is had on Martin v. State, 122 Texas Cr. Rep. 174, 54 S.W. 2d 812, which was reversed because the prosecutor told the jury that the accused was not entitled to a suspended sentence unless he proved his good reputation but which is not authority here.

Certainly, the prosecutor had the right to argue that certain reputation witnesses for the appellant did not, in fact, know her reputation.

Bill of Exception No. 7 reflects that the appellant called a fact witness, Clay, who testified that she had known the appellant for a number of years, and in the course of his argument the prosecutor commented upon the appellant's failure to ask this witness about her reputation.

Reliance is had, among other cases, on Pollard v. State, 33 Texas Cr. Rep. 197, 26 S.W. 70, wherein it was held reversible error for the prosecutor to argue the failure of the accused to call any reputation witnesses at all. The Pollard case cannot be construed as authority here because the appellant did call a number of reputation witnesses and the prosecutor had the right to question why a fact witness that she had called was not questioned concerning this issue.

Bill of Exception No. 9 grows out of certain proof relating

to a hood or headgear of the injured party which the appellant claims to have found in her husband's automobile. Appellant's counsel had argued that it was clearly established that it belonged to the injured party because no witness had denied such fact. In his argument, the prosecutor said, "There is only one person living to deny this, and she is blind, she can't even see."

The objection was that this was "an unfair deduction, improper argument and prejudicial."

Appellant argues that there were other members of the injured party's family who could have denied that it was her hood.

We have concluded that this argument was clearly provoked by the argument of defense counsel, and hence presents no reversible error.

Bill of Exception No. 10 complains of further argument relating to the hood, in which the prosecutor suggested to the jury that they examine the same in the jury room and said, "I see some hair on that hood, and it is certainly not black." The objection was that the remarks of the prosecutor were out of the record. The court told the jury that the statements of counsel were not evidence and they were to consider only the testimony of the witnesses and the exhibits. We have concluded that either counsel might examine any exhibit and direct the jury's attention to anything of pertinence. The jury might then examine the exhibits for themselves and determine if counsel's observations were accurate.

Bills of Exception Nos. 8 and 11 are directed to rulings of the court and present the only serious question in the case. One of the bills is qualified by the court by attaching thereto the entire argument of the prosecutor. From this, we find that appellant's counsel objected seventeen times. A number of these objections have been discussed in the preceding bills. Bill of Exception No. 8 relates to the court's ruling in passing upon the argument discussed in Bill of Exception No. 5. The objection was:

"Your Honor, that Mr. Louie was just as available to the District Attorney as he was to the defendant, and we object to that as being improper argument. If he wanted Mr. Louie, why didn't he bring him up here.

"The Court: The jury will remember the testimony. Don't interrupt the speaker.

"Mr. Barber: I am not interrupting the speaker, but I certainly have a right to make an objection to his argument.

"The Court: Yes, sir, you can object, but don't comment on it. Go ahead with the argument."

If there had been no further objections, then the court's remarks would have presented a serious question because counsel has a right, and it is his duty, to interrupt the prosecutor if he is making improper argument. Following this admonition of the court, however, we find ten further objections which show conclusively that counsel was not intimidated by the remarks of the court.

Bill of Exception No. 10 reflects the following:

"The Court: Well, he can draw his own deductions from the testimony. I overrule the objection. Go ahead with the argument.

"Mr. Barber: Your Honor, I object to the Court making a comment on my objections. The Court is giving everybody in this courtroom the impression that I don't have the right to object, and the Court knows that if I don't object, I waive it.

"The Court: Yes, but we have to argue the case. It seems like the District Attorney can't argue for a minute without an objection.

"Mr. Barber: Your Honor, I object, I object to the Court making the statement in this courtroom that it seems like the District Attorney can't make a statement without an objection, as being a comment on the weight of the evidence and as expressing prejudice on the part of the Court.

"The Court: The Court is trying to control the argument, which the Court is required to do. The Court is required to give each one a chance to argue the case. And that is all I am trying to do.

"Mr. Barber: Then I ask the Court to instruct this jury that defense counsel has a right to object.

"The Court: Certainly you have a right to object. You are given a chance every time. Let's try to keep the argument going."

When taken with that which preceded and that which followed, the statement of the court that the district attorney was having trouble making his argument because of the objections is not nearly so serious as if the statement is considered by itself standing alone. It must be remembered that the jury heard the entire argument, the objections, and the rulings; and when the same is viewed as a whole the seriousness of this one remark is not considered of sufficient gravity to call for a reversal of this conviction.

Finding no reversible error, the judgment of the trial court is affirmed.

DAVIDSON, Judge, dissenting.

The indictment contains three counts charging that appellant deprived Addie Bell Williams (1) "of a member of her body, to-wit, her eyes, by then and there wilfully and maliciously putting out her said eyes by throwing lye into the face of the said Addie Bell Williams" and (2) of "both of her eyes, by then and there * * * throwing lye into the face of the said Addie Bell Williams and putting out both of her eyes" and (3) of "her eyes, by then and there * * * putting out her said eyes by throwing a solution, the contents of which is unknown to the Grand Jurors, into the face of the said Addie Bell Williams."

All three counts were submitted to the jury and a general verdict of guilty was returned, without a finding by the jury, or the trial court in entering judgment, as to which count was sustained by the proof.

I make mention thereof because of the peculiar facts here presented. If lye constituted the means used, then the state knew and was cognizant of that fact; if the state did not know what was used and could not ascertain or identify the means used, then lye was not used. Moreover, the jury could not say that lye was used and, at the same time, say that the proof did not show the means used. Both conditions could not exist.

The state's witness Dr. Crymes was very positive that lye caused the loss of the eyesight. He testified, "I certainly know it was lye. And that ain't no lie."

Notwithstanding such direct testimony and also that of another doctor to the same effect, the state called as a witness the foreman of the grand jury which returned the indictment in this case and proved by him that the grand jury was unable,

after diligent effort, to "determine definitely beyond any reasonable doubt what the solution was."

If the state was unwilling to accept the testimony of its own witnesses that lye constituted the means used, then what means were used? Under this record, no one, not even the trial court, has attempted to say.

It must be remembered that in order for this appellant to be guilty, she must have wilfully and maliciously put out the eyes of the injured party. "Wilfully," as there used, means "intentionally," with evil intent, while "maliciously" signifies the intentional doing of a wrongful act. Ohlrich v. State, 162 Texas Cr. Rep. 502, 287 S.W. 2d 478.

The trial court defines those terms to the jury in keeping with the meaning here given.

Art. 1166, P.C., defines the offense of maiming as follows:

"Whoever shall wilfully and maliciously cut off or otherwise deprive a person of the hand, arm, finger, toe, foot, leg, nose or ear, or put out an eye or in any way deprive a person of any other member of his body shall be confined in the penitentiary not less than two nor more than ten years."

As applicable to the instant charge as well as the facts, the offense of which appellant has been convicted is the wilful and malicious putting out of the eyes of the injured party. So, for her to be guilty, appellant must have thrown the solution— whatever it was—into the face of the injured party with the intent to put out her eyes, and for no other purpose.

Proof, merely, that lye was thrown in the face of the injured party will not sustain a conviction. It must have been done wilfully—that is, with intent and purpose to put out the eyes of the injured party or the sight thereof and not merely for the purpose of an assault.

The facts must show that the means used were such as in the manner used would ordinarily result in maiming and be such as would supply the necessary intent to maim. Rankin v. State, 139 Texas Cr. Rep. 247, 139 S.W. 2d 811.

It was the state's contention, and evidence was introduced to that effect, that appellant assaulted the injured party by

striking her over the head and around the face with a paper sack in which there was a can containing some character of solution. The solution spilled or got into the eyes of the prose-'cuting witness as a result of which she lost the sight of both eyes.

The defensive theory, supported by the testimony of the appellant, was to the effect that on the day of the difficulty she had been engaged in cleaning the kitchen stove of her employer and used a solution of "Saniflush" for that purpose; that the remainder of the Saniflush solution was put in a can; that after the can was covered it was put in a sack; and that appellant then placed the solution in the can in the sack in her automobile to take home with her to be used in cleaning her own stove.

Appellant further testified that the prosecuting witness made an attack on her, without justification or excuse, while she was seated in her car, by beating her on the arm with a hammer; and that as she (appellant) was being pulled from the car by the "hair of the head," she grabbed the sack containing the can of solution and *"throwed* it in her face, can, paper sack and all."

In addition to her plea of self-defense, appellant denied any intent to maim or injure the prosecuting witness.

There is an absence of any testimony that the solution in the can was, in fact, "Saniflush" or a solution of Saniflush or that a solution of Saniflush would destroy or be calculated to destroy eyesight when thrown into the eyes. Nor is there any suggestion, under evidence, as to the strength of the solution or that appellant knew or had any knowledge that loss of eyesight would result when a solution of Saniflush was thrown into the eyes.

Under this state of facts, the trial court, after defining the term "wilful" and "malicious," instructed the jury as follows:

"Bearing in mind the foregoing law and definitions, if you find and believe from the evidence beyond a reasonable doubt that the defendant, in Mitchell County, Texas, on or about the 9th day of July, 1955, wilfully and maliciously threw into the face of Addie Bell Williams a solution of lye, or any other solution, the contents of which being unknown to the Grand Jury, that put her eyes out, then you will find the defendant guilty

and assess her punishment at a term in the State penitentiary for not less than two years nor more than ten years, as you, in your discretion, may determine. But unless you do so find and believe from the evidence beyond a reasonable doubt, or if you have a reasonable doubt, then in that event you will find the defendant not guilty."

In addition, the trial court also instructed the jury as follows:

"You are further charged that if you find and believe from the evidence beyond a reasonable doubt that the means used by the defendant was such as would, in the manner used, ordinarily result in maiming or destroying the sight of the eyes, the law presumes that the intention was to maim, without regards as to the knowledge of the defendant, in using such means, as to whether or not the same would be calculated to maim or destroy the sight of the eyes."

By these instructions the jury were told that if appellant intentionally and with malice threw into the eyes of the prosecuting witness a solution of some kind or character which resulted in destroying the sight of the eyes, the law presumed that she, the appellant, intended to put out the eyes of the prosecuting witness—and this, regardless of whether appellant knew the solution was likely or calculated to destroy the sight of the eyes or that the solution was in fact calculated to do so.

The charge was not a correct statement of the law, because (a) a trial court at no time or place or under any conditions has the lawful right to instruct a jury that an accused is presumed to be guilty of the offense charged, and (b) the presumption of innocence is stronger than any presumption of guilt which might arise merely from the means used to accomplish a guilty purpose. The burden of proof rests upon the state to overcome the presumption of innocence by establishing the guilt of the accused beyond a reasonable doubt. A trial judge could not, therefore, be authorized to instruct the jury that the accused is presumed to be guilty. In my opinion, that is what the trial judge here charged the jury.

What the trial court was here doing was applying the provisions of Art. 45, P.C., to this case. That article reads as follows:

"Intention presumed.—The intention to commit an offense is

presumed whenever the means used is such as would ordinarily result in the commission of the forbidden act."

Throughout the years, this court has cautioned trial courts against giving this article in charge to the jury, for the reasons above stated. Attesting authorities will be found collated under Note 3 of Art. 45, Vernon's C.C.P. See, also, Baylor v. State, 151 Texas Cr. Rep. 365, 208 S.W. 2d 558. Especially is that true where, as here, the elements of Art. 45, C.C.P., were given in the abstract, with no application being made thereof to the facts. Stanford v. State, 103 Texas Cr. Rep. 182, 280 S.W. 798.

The facts and conclusion stated become material in passing upon appellant's contention that she was entitled to have the jury instructed upon her lack of intent to put out the eyes of the prosecuting witness. The trial court nowhere charged the jury upon that subject. By exception to the court's charge, as well as by a special requested charge, the trial court was requested to do so.

In my opinion, the trial court should have responded to that exception and to that request.

The appellant expressly testified to a lack of intent to injure or maim the prosecuting witness.

No one knew what constituted the means used by appellant —that is, whether such was lye or some other solution. Under such state of facts it could hardly be said that the means used constituted such as would ordinarily result in destroying the sight of the eyes.

Notwithstanding such fact, appellant was presumed to be guilty, according to the trial court's charge, if the means used would ordinarily result in destroying the sight of the eyes. If the state did not know what solution was used, I am at a loss to understand how it could, at the same time, presume what result would follow from the ordinary use thereof.

I am convinced that the appellant was entitled to have the jury instructed in accordance with her affirmative defense of a lack of intent to injure or maim the prosecuting witness.

Whatever be the presumption arising by Art. 45, P.C., it surely cannot be said that it may not be rebutted. To me, that is exactly what my brethren here hold when they say that under

the instant facts appellant was not entitled to have the jury instructed upon her lack of intent to maim and that she could not rebut by proof, therefore, the presumption of an intent to maim, which presumption the trial court submitted to the jury.

I am aware of the line of authorities which hold, in cases similar to that here presented, that the trial court is not under the burden of requiring a finding by the jury of a specific intent to maim in order to convict.

That rule, however, has no application here, where the appellant was asking only that the jury be instructed upon her lack of intent to maim or injure. Has the time come when an accused is not entitled to have the jury instructed upon an affirmative defense? It looks like it.

There is, in my opinion, another and very cogent reason why the charge of the trial court was error: There is not a line of testimony suggesting that appellant knew that the solution, in the manner used, would ordinarily result in putting out the eyes. According to her testimony, appellant thought the solution was a solution of Saniflush. There is no testimony suggesting that a solution of Saniflush would, in the manner used, ordinarily result in putting out the eyes. So then, if the solution used was not a solution of Saniflush but was, in fact, some other solution, appellant could hardly be charged with knowledge of its effect.

Thus, the defense of a mistake of fact is shown—that is that the solution used was not in fact a solution of Saniflush, as appellant thought, but was another and different solution and one which, in the manner used, deprived the prosecuting witness of her eyesight.

When the trial court instructed the jury to the effect that appellant was presumed to be guilty if she threw the solution into the face of the prosecuting witness, he completely took from the jury all consideration of the question of a mistake of fact on the part of the appellant. Under the instruction as given, the jury was not authorized to consider for any purpose the affirmative defense of a mistake of fact.

I call attention, also, to the fact that the offense of maiming does not arise where the maiming arises out of a sudden attack unconnected with any premeditated design. Key v. State, 71 Texas Cr. Rep. 642, 161 S.W. 121.

The instant facts, especially those shown by the testimony of the appellant, definitely raised the defense that what was done by the appellant was sudden and without any premeditation and therefore without an intent to commit the offense charged. For this further reason, the charge on lack of intent should have been given.

I cannot bring myself to believe that this appellant has been shown to be guilty of the offense charged. All the cases, with which I am familiar, wherein convictions were sustained for maiming, contain evidence showing that the means used were calculated to cause or bring about that result. I know of no case —and confidently assert that there is none—in which a conviction was had for maiming where no one knew or had knowledge of what constituted the means used or that the ordinary use thereof would result in maiming. This conviction rests upon such a state of facts.

There is no testimony showing that such solution was dangerous or was likely, in the manner used, to put out the eyes of the prosecuting witness.

The evidence in this case, in my opinion, does not show the crime of maiming, because of the absence of any evidence of an express intent to maim or the existence of any facts by which that intent may be said to have been otherwise shown or established.

The majority opinion suggests that appellant did not sufficiently except to the court's charge for the failure to charge upon her lack of intent to maim.

In order that there might be no mistake about this, I quote from the special charge that appellant requested, viz.:

"* * * and if you further believe from the evidence that throwing such solution into the eyes of Addie Bell Williams was accidental, and not intentional, upon the part of the defendant, or if you have a reasonable doubt thereof, you will give the defendant the benefit of such doubt and acquit her, and say by your verdict Not Guilty."

Such charge was refused, and appellant excepted. Exceptions and objections to the failure to give the charge were reserved to the court's charge.

The trial court charged neither upon accident nor lack of intent.

I am at a loss to understand how it may be said that the requested charge was not sufficient to request that the jury pass upon appellant's affirmative defense of a lack of intent to maim. To my mind, the duty of the trial court to submit to the jury that affirmative defense was so clear and necessary, under the facts here presented, that no request or exception therefor was necessary or should have been required. The trial court should have instructed upon that defensive theory in obedience to the duty resting upon him to "deliver to the Jury * * * a written charge, distinctly setting forth the Law applicable to the case." Art. 658, Vernon's C.C.P.

However, if an exception or request on the part of appellant to have that issue submitted to the jury was necessary, the least suggestion along that line is, in my opinion, all that should have been necessary or required. To my mind, the special requested charge was sufficient for that purpose.

Under the facts of this case when viewed as a whole, together with the appellant's positive testimony that she did not intend to injure or maim the prosecuting witness, it occurs to me that if our vaunted claim of equal justice under law really exists, in fact, and is not a mere figment of imagination, surely, then, somewhere or at some stage of the trial the jury should have been told that if appellant did not intend to maim the prosecuting witness when she threw the solution upon her, or if they entertained a reasonable doubt that she did not so intend, she would not be guilty.

Instead of such instruction being given, the jury were told, in effect, that appellant was presumed to have intended to maim. Under the facts, the charge which I have heretofore copied had that force and effect.

I respectfully dissent to the affirmance of this case.