THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* FEDERICO CORDERO, Defendant and Appellant.

No. 16207. Resubmitted February 6, 1961.—Decided April 11, 1961.

368

*René Muñoz Padín, Rafael Barbosa, Ernesto Juan Fonfrías, Rubén Gaztambide Arrillaga* and *Angel Viera Martínez* for appellant. *Juan B. Fernández Badillo, Secretary of Justice,* and *Arturo Estrella, Fiscal of the Supreme Court,* for appellee.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

The District Attorney of San Juan charged Federico Cordero with the crime of mayhem (§ 212 of the Penal Code,

33 L.P.R.A. § 671) consisting in that on February 19, 1956, he "illegally, wilfully, with malice aforethought, and with criminal intent," assaulted and battered Carlos Nevares with a glass, "breaking it in his face and inflicting maiming wounds on him, thereby causing the permanent defacement and disfigurement" of the injured party.[1] The trial was held by the court without a jury which found the defendant guilty and imposed on him an indeterminate sentence of one to five years imprisonment in the penitentiary.

From this judgment an appeal was taken in which eighteen errors were assigned. For the sake of a better disposition of the case we have classified them into various groups, according to the affinity of the questions raised.

## I

■■ The appellant maintains that the trial court erred in convicting the defendant for the offense charged, without the element of malice having been established by the evidence. A specific intent need not be proved in order to constitute the crime of mayhem, *People v. Pizarro*, 21 P.R.R. 17 (1914); *Brown v. United States*, 171 F.2d 832 (C.A. D.C.) (1948); *Kennedy v. State*, 270 S.W.2d 912 (Ark. 1954). Malice aforethought is not an essential element either, and proof of premeditation or deliberation is not required, *People v. Wright*, 29 Pac. 240 (Cal. 1892); *Boulding v. State*, 177

---

[1] The modality of the offense of mayhem with which the accused was charged was incorporated through Act No. 174 of March 22, 1946 (Sess. Laws, p. 288) as a result of our decision in *People v. Beltrán*, 64 P.R.R. 843 (1945). As to the requirement that it should be alleged and proved that said disfigurement must be of a permanent character, see *People v. Vantapool*, 70 P.R.R. 510 (1949). Until the approval of the afore-mentioned Act, this crime had had the same meaning in Puerto Rico as in common law, and referred, in general terms, to depriving a human being of a member of his body. Hence, § 286 of the Code of Criminal Procedure (34 L.P.R.A. § 817) provides that if it has not been established that the victim remained maimed regarding some member of his body, the jury shall find the defendant guilty of aggravated or simple assault and battery. *People v. Díaz*, 32 P.R.R. 816 (1924); *People v. Pérez*, 25 P.R.R. 367 (1917).

P.2d 152 (Okla. 1947) but, in any event, said malice may be inferred from the conduct of the accused or the circumstances attending commission of offense, *State* v. *Thomas*, 142 P.2d 692 (Kan. 1943) *cert. denied*, 322 U.S. 739, since malice is, for this purpose, a synonym of the purpose or design to injure. Unless it is satisfactorily proved that the defendant acted in self-defense, malice shall be established by proof of the commision of the act, 19 Cal. Jur. 2d § 337. One of the aims of the lawmaker in defining this offense was to avoid astounding brutality in personal encounters and attacks, and hence that malice could be presumed from the atrocity of the act itself and which, among other cases, is inferred from the nature of the instrument or means used for the assault. *People* v. *McWilliams*, 197 P.2d 216 (Cal. 1948) (glass); *Rankin* v. *State*, 139 S.W.2d 811 (Tex. 1940) (bottle); *United States* v. *Bando*, 244 F.2d 833 (C.A. 2, 1957); *Lee* v. *State*, 298 S.W.2d 155 (Tex. 1957) (throwing of acid to the face); *Babb* v. *State*, 297 S.W.2d 132 (Tex. 1957) (handcuffs); *Pate* v. *State*, 177 S.W.2d 933 (Ark 1944) (blackjack). Considering that the assault proved in this case was caused by a glass which struck the face of the injured party, it is presumed that the defendant is responsible for the natural consequences of such an act. *People* v. *Irizarry*, 33 P.R.R. 160 (1924).

## II

The defendant alleges that the refusal (1) to suspend trial because the defendant "was not ready" to enter the hearing of the case (First Error) and (2) to grant the defendant a recess of half an hour so that he could hold counsel with his lawyers for the purpose of preparing the cross-examination for the witnesses for the prosecution (Fifth Error), are reversible errors because they constituted an abuse of discretion of the case under the attendant circumstances. In order to dispose of this contention it is necessary to briefly outline the facts relating to these incidents.

The information in the present case was filed on February 24, 1956 and the hearing of the case was set for three months later, that is, for next May 28. The defendant appeared in court represented by five attorneys, Mr. Ernesto Juan Fonfrías, Mr. Rubén Gaztambide Arrillaga, Mr. René Muñoz Padín, Mr. Angel Viera Martínez, and Mr. Rafael Barbosa. At the commencement of the hearing the defendant, represented by Mr. Viera, requested a continuance in order to have "an opportunity to prepare himself for trial," (T-2) because: (a) during the days preceding trial the principal attorney, Mr. Fonfrías, as well as Mr. Gaztambide and Mr. Muñoz Padín, had been busy with their work as members of the Legislative Assembly; (b) Mr. Viera, who had been employed approximately *two weeks* before the trial, had been conducting other criminal prosecutions, and because of his health, he was in no condition to take charge of the case; (c) the attorneys had not been able to convene sufficiently in advance in order to work out the plan for defense and had been unable to "investigate" the members of three panels of the jury which had been drawn three days before (Friday, May 25). It was accepted that the date set for trial had been suggested by the members of the defense at the time of the arraignment (T-7). The request for a continuance was denied and immediately, the defense requested a *five minutes* recess and the court granted *half an hour*. When the morning session was resumed, the defendant waived his right to a trial by jury and submitted himself to the court, alleging that since "he does not know who the jurymen are, and has had no time to find out, he thinks that he would be handicapped if he submits to a trial by jury" (T-42); at the insistence of the court he ratified his decision because "the defendant and his attorneys believe that Your Honor shall do proper justice" (T-43, 45). Immediately a recess was ordered lasting until 2:30 p.m., which was extended a bit longer until Mr. Fonfrías arrived. All the attorneys for the defendant were pres-

ent during the session on the afternoon of the 28th, and the District Attorney proceeded to present the evidence. Mr. Viera and Mr. Barbosa represented the defendant at the hearing, which continued on May 29 and 31. On this last day the hearing was postponed because of Mr. Vieras' illness, and it was continued on the next day, June 1, and on this occasion Mr. Fonfrías participated therein. The evidence for the prosecution ended on Friday, June 1. The defendant presented his evidence on June 4 and 5, and on the last day Mr. Fonfrías was also present. The case was submitted without arguments. The transcript reveals that the defendant had at every moment the legal assistance of Mr. Viera, who participated actively and competently in the presentation of the evidence and in the cross-examination of the witnesses of the People. An eloquent proof of his diligent professional activity is the transcript of the record which consists of three volumes and 915 pages.

The facts stated manifestly show that the trial court did not abuse its discretion in denying a continuance of the trial, the only case in which such a ruling could entail the reversal of the judgment. *People* v. *Mercado*, 69 P.R.R. 310 (1948); *People* v. *Arce*, 67 P.R.R. 233 (1947); *Amy* v. *District Court*, 59 P.R.R. 658 (1942); *cf.*, in relation to requests of suspension in civil matters, *Gómez* v. *Díaz*, 72 P.R.R. 678 (1951); *Pepín* v. *Ready-Mix Concrete*, 70 P.R.R. 723 (1950); *Coll* v. *District Court*, 68 P.R.R. 114 (1948). In *People* v. *Vélez*, 63 P.R.R. 390 (1944) we considered the right to request continuances as frivolous and dilatory because the defendant was not prepared to enter trial; and in *People* v. *Morales*, 66 P.R.R. 9 (1946), we dismissed the alleged error committed in denying a postponement on the ground that both lawyers of the defendant were physically exhausted because of their work in other cases which had prevented them from conferring with the defendant. As to the fact that three of the lawyers of the defendant were also members of the Legis-

lature, acting as such, and presuming the validity of the Act of February 21, 1902 (2 L.P.R.A. §§ 12 to 19),[2] concerning privileges and immunities of members of the Legislative Assembly, the trial court did not err either, since § 2 (2 L.P.R.A. § 13) thereof only renders null the setting of any hearing in which a legislator is interested "as *one* of not more than *two attorneys* of record for one of the parties." Besides, as it has been stated (1) before the District Attorney started to present the evidence, a recess was ordered which was extended until it was nearly 3:00 p.m., during which the defendant had the opportunity to confer with his attorneys, and the latter with the witnesses, (2) before the defendant started to present his evidence, he had the benefit of two holidays, since the District Attorney finished on the afternoon of a Friday, and the trial continued on the following Monday; and (3) even during the presentation of the evidence of the people, there was a recess of a whole day because May 30 was a holiday. (Section 387 of the Political Code (1 L.P.R.A. § 71).) The inevitable conclusion is that the defendant had sufficient time to prepare himself for the trial of the case before as well as in the course of the trial, and that the continuance to which we have referred at the beginning of this discussion did not cause him any prejudice whatsoever. *People* v. *Ramos*, 64 P.R.R. 436 (1945). The defendant, upon requesting the continuance, did not comply with the provisions of Rule No. 9 of the Administration of the Courts (4 L.P.R.A. App. II, R. 9.)

### III

■■ The appellant also complains of the action of the trial court in not granting him sufficient time to investigate "the jurors who were to try him, and in permitting him, as a result of that circumstance, to waive his constitutional right to a trial by jury (Twelfth Error). We have stated the

---

[2] See *Claudio* v. *Ortiz*, 29 P.R.R. 404 (1921) and Art. III, § 14 of the Constitution of the Commonwealth of Puerto Rico.

circumstances under which the waiver was made and the error charged is clearly frivolous. The presiding judge was not satisfied with the statements of the attorney for the defendant, but he specifically questioned the defendant who said "I ratify every phrase said here by my friend and counsellor, Mr. Viera Martínez" (T-45) and, among others, the one to the effect that "Your Honor shall do proper justice." (T-44.) On the other hand, the court did not commit any irregularity in drawing three panels of 24 jurors on the Friday preceding the hearing, each one to render services in the division where the case was heard. Sections 199, 200, and 202 of the Code of Criminal Procedure (34 L.P.R.A. §§ 631, 632, and 634); *People* v. *Morales*, 66 P.R.R. 9, 15 (1946). The 74 jurors drawn formed part of the general panel of 400 jurors who had been selected since April by the jury commissioners. The defendant had the months of April and May, at the least, to "investigate" the citizens from among whom the twelve who would definitively try him, would be selected. This error was not committed either.

## IV

██ The defendant assigns ten errors in relation to the admissibility and the exclusion of certain evidence, to wit:

(1) In not permitting counsel for the defense to cross-examine two witnesses for the prosecution—Juan Ríos and Roberto González—as to whether the former had participated in certain primaries against the defendant, and the latter, as to whether he had waged a political battle against the defendant;

(2) In not permitting a witness for the defense to give an account of the statements made to him by the defendant upon arriving at the police headquarters, almost immediately after the crime had occurred; and these statements being part of the *res gestae;*

(3) In permitting a doctor to testify that the face of the injured party was maimed and disfigured;

(4) In not permitting counsel for the defense to cross-examine the witness Alfredo Matos on the description of the place where the crime occurred, especially when it had permitted the

District Attorney to do so in the direct examination of another witness for the prosecution;

(5) In not permitting the counsel for the defense to cross-examine the witness Roberto González regarding accusations for "other offenses" after the prosecuting attorney had asked him whether the witness and the defendant had mutually accused each other;

(6) In not permitting the counsel for the defense to cross-examine the injured party on whether he had had other incidents of violence;

(7) In permitting the District Attorney to use, as an illustration, a glass that had not been admitted in evidence, for the purpose of the interrogation;

(8) In not permitting a witness to relate the statements that the injured party made to him, moments before he arrived at the place where the crime occurred;

(9) When the court asked the witness a specific question in order to make clear whether said witness left the scene of the crime before Enrique Ubarri, who was announced as witness for the defense, and

(10) When the court asked the witness for the defense, Edgardo Cordero, a specific question.

In view of the fact that the trial was not held before a jury, but before a judge of renowned experience in criminal cases, we must conclude, on a slight examination of the preceding assignments, that we do not see how, presuming that any one of the acts assigned constituted error, it could entail a reversal of the judgment. It suffices to say that there was sufficient oral evidence before the trial court to support the conviction apart from that of the witnesses whose impeachment was attempted, that the judge made his own personal appreciation of the condition of the face of the injured party as a consequence of the assault and that the evidence which was excluded could not substantially alter the result of

---

[3] Regarding these errors enumerated in Part IV of this opinion, see (a) remarks and conduct of judge during trial: *People* v. *Pieras*, 72 P.R.R. 729 (1951); *People* v. *Rivera*, 71 P.R.R. 115 (1950); *People* v. *Cruz*, 62

the trial.[3] *People* v. *Garay*, 67 P.R.R. 815 (1947); *People* v. *Rivera*, 67 P.R.R. 179 (1947); The foregoing also disposes of the error that the evidence is not sufficient to warrant the conviction. *People* v. *García*, 78 P.R.R. 81 (1955).

## V

As final error it is pointed out that the trial court's action was moved by passion, prejudice, and partiality. This assignment has become sort of a proverbial rubber stamp in the assignment of errors in criminal appeals, despite the fact that we have continuously admonished its impropriety unless grounded on something more than mere isolated expressions carved out of the incidents of a long and arduous trial and in relation to unfavorable rulings in matters of the admission or exclusion of the evidence. We have carefully examined the transcript of the whole case and, in truth, we find that the presiding judge acted with absolute impartiality, as was his constant policy during the long time he honored the bench. We are satisfied that the defendant had a fair trial, and that the judge, far from acting under the influence of prejudice, benefited the defendant with his discretion, especially when we consider the lenient terms of the sentence imposed. *People* v. *Rosado*, 72 P.R.R. 773 (1951); *People*

---

P.R.R. 801 (1944), *cf. People* v. *Sanjurjo*, 73 P.R.R. 526 (1952); *People* v. *Lampón*, 78 P.R.R. 102 (1955); (*b*) on material evidence to impeach the credibility of a witness on the ground of a prior conviction, *People* v. *González*, 80 P.R.R. 203, 205 (1958), where it is held that as "having had a previous case" does not necessarily mean that one has been convicted of a felony, said evidence is not sufficient for the purpose of impeachment; *People* v. *Rodríguez*, 62 P.R.R. 749 (1944); § 244 of the Code of Criminal Procedure (34 L.P.R.A. § 723); (*c*) on admission of evidence of opinion, *People* v. *Munera*, 39 P.R.R. 267 (1929) (scratch); *People* v. *Pellicier*, 56 P.R.R. 846 (1940); *People* v. *Ayala*, 51 P.R.R. 542 (1937); (*d*) on facts admitted or excluded over appellant's objection, when they have been established by other evidence, *People* v. *Avilés*, 66 P.R.R. 278 (1946); *People* v. *Alvira*, 69 P.R.R. 221 (1948); and (*e*) on the effect of the exclusion of evidence which tends to establish the interest of a witness, *People* v. *Rodríguez*, 66 P.R.R. 302 (1946); *People* v. *Millán*, 66 P.R.R. 233 (1946).

v. *Monzón*, 72 P.R.R. 69 (1951); *Vázquez* v. *Rivera*, 70 P.R.R. 203 (1949).

None of the errors assigned having been committed, the judgment appealed from will be affirmed.