Farrell M. SMITH, Appellant,

v.

The STATE of Texas, Appellee.

No. 742.

Court of Civil Appeals of Texas,
Corpus Christi.

Dec. 29, 1972.

Rehearing Denied Feb. 1, 1973.

Edmond J. Ford, Jr., Corpus Christi, for appellant.

Davis Grant, Gen. Counsel, State Bar of Texas, Austin, Harris, Cook & Browning, James R. Harris, Corpus Christi, for appellee.

## OPINION

NYE, Chief Justice.

This is a disbarment action. The State of Texas acting by and through the Grievance Committee for Bar District 14–A of the State Bar of Texas brought an action to disbar Farrell Murray Smith from the practice of law. The case was tried to a jury. Based on the findings of the jury, the trial court suspended Smith from the practice of law for five years from and after January 28, 1972. Smith has appealed the trial court's judgment.

The Grievance Committee for Bar District 14–A of the State Bar of Texas, after consideration of testimony before it, filed suit for the disbarment of Farrell Murray Smith, appellant herein, alleging nine counts of professional misconduct. Prior to trial, appellant filed an application for a writ of prohibition in this Court to prohibit the trial judge from proceeding to trial. The writ was denied. Smith v. Grievance Committee, State Bar of Texas for District 14–A, 475 S.W.2d 396 (Tex. Civ.App.—Corpus Christi 1972). The case then proceeded to trial before a jury. The jury found the appellant guilty of dishonorable conduct on Counts Two, Three, Four, Five and Seven, and not guilty on Counts One, Six and Eight. Count Nine was not submitted. The trial court rendered judgment suspending Smith for 5 years from practicing law. On appeal, appellant presents eighteen points of error.

The appellant claims reversible error in his second point because the trial court did not permit appellant to present evidence relating to the mental history of Fred E. Hendricks, a material witness, concerning Counts 4 and 5. The State presented a motion in limine to the court to prevent the introduction of any such testimony. The motion was granted. At the trial, immediately prior to the cross-examination of Hendricks, appellant re-offered the evidence of prior mental history to impeach his credibility. It was refused by the trial court. At the conclusion of the cross-examination of witness Hendricks, appellant made his bill of exception. This excluded evidence in the bill of exception is properly before us.

Count 4 charged the appellant with professional misconduct. Specifically it involved a transaction between the appellant as an attorney representing Fred E. Hendricks and Charles W. Henderson in the prosecution of a lawsuit. The count charges the appellant with subornation of perjury, a crime of inducing another to commit perjury or false swearing. A brief statement of the facts showed that Hendricks and Henderson employed the appellant to bring suit for an accounting in a partnership against Robert I. Kubicek. The case was subsequently expanded to include a count for libel and slander against Kubicek.

Kubicek's attorney arranged to take the depositions of Hendricks and Henderson. On the way to take the deposition, Hendricks testified that he told the appellant that he had previously been convicted of a felony. He asked the appellant what he should do if this question arose at the deposition. Hendricks testified that the appellant told him that it wasn't important because this was a civil case; that it was irrelevant; and to simply say "No". At the deposition, Hendricks (having previously been sworn to tell the truth) was asked if he had been convicted of a felony. He stated that he had not.

During the court trial of the suit of Hendricks and Henderson against Kubicek in 1969, and while Hendricks was on the witness stand under cross examination, he was again asked the question concerning a prior felony conviction in 1963. Hendricks did not answer. The evidence showed that thereafter a complete breakdown of that case took place following the propounding of the question. Appellant Smith, according to Hendricks, started yelling. Hendricks began crying, whereupon the court recessed the jury and cleared the courtroom. Later appellant Smith told Hendricks to see the probation officer and get information from him so he could hold

Kubicek's attorney in contempt of court, presumably for asking the question. Later the appellant, on behalf of Hendricks and Henderson, took a nonsuit.

In the present disbarment proceeding, Hendricks stated that he had told the appellant of his previous conviction on several occasions, including one time when he signed a bond. Henderson, Hendricks' partner, testified that he had heard Hendricks discuss the conviction with the appellant on the way over to take the deposition. He corroborated Hendricks' testimony to this extent. The appellant emphatically denied telling Hendricks to perjure himself; he stated he did not know of the prior conviction of Hendricks.

On cross examination of Hendricks, appellant's attorney attempted to attack the credibility of Hendricks by introducing evidence of Hendricks' past mental condition. The trial court refused to admit any of the testimony.

Prior to the trial of the disbarment proceeding, the State Bar presented three motions in limine before the trial commenced. One of the motions restricted the appellant from injecting into the trial any evidence that Hendricks was confined to a mental hospital and/or was under the care of a psychiatrist; the second motion restricted the appellant from mentioning that Hendricks had committed any other crime; and the third motion restricted the appellant from injecting into the trial any evidence that Hendricks and Henderson were homosexuals. The three motions were granted.

During the trial and before the appellant started the cross examination of Hendricks, and out of the presence of the jury, the attorney for the appellant made known to the judge that he wanted to question Hendricks, with regard to the subjects prohibited by the motions in limine. The trial court refused to let him. After the cross examination of Hendricks, the attorney for the appellant made a bill of exception on Hendricks' prior mental condition. The trial court refused to permit the appellant to make any bill concerning Hendricks being a homosexual.

In the bill that was permitted by the trial court, it was shown that Hendricks had been convicted of armed robbery in Virginia in 1963. At that time he was given parole on the condition that he would enter a mental hospital for treatment if he "needed it". The evidence showed that Hendricks had been in a mental home or institution for observation after arrest from 1960 to 1968, thereafter being transferred from jail to several hospitals for observation; that during this particular time, Hendricks was in the hospital for 18 months; that prior to entering the Army, Hendricks had been under a psychiatrist's care and had been treated at the Walter Reed Hospital for a period of time. In 1957, by a jury verdict, he was proved insane and confined for 15 months in the Rusk Institute for the criminally insane where he had "no treatment". He was subsequently found sane. There was evidence that he had had auditory hallucinations. After the trial in which Hendricks and Henderson had sued Kubicek in 1969, Hendricks told Smith that he was not sure he had been convicted in 1963. He stated that his lawyer "may have messed him up" and that that had been his reason for being convicted.

█ It was relevant, we believe, that during the Kubicek trial, Hendricks completely broke down and cried when asked if he had ever committed a felony. This recent episode showed a possible continuation of his prior mental condition. The jury was entitled to pass on his credibility. The jury ultimately answered the following special issues concerning Count 4:

"Do you find from a preponderance of the evidence that prior to the taking of Fred E. Hendricks' oral deposition in the Kubicek case, the Defendant, Farrell Murray Smith, knew that said Fred E. Hendricks had theretofore been convicted of a felony?

Answer *We do*

Do you find from a preponderance of the evidence that prior to the taking of the deposition of Fred E. Hendricks, Farrell Murray Smith willfully advised Fred E. Hendricks to answer 'No,' should he be asked if he had been convicted of a felony during the taking of a deposition in connection with a suit styled Fred E. Hendricks et al, vs. Robert J. Kubicek, et al, Cause No. 96800–A on the docket of the 28th Judicial District, Nueces County, Texas?

Answer *We do*"

Count 5 charged the appellant with altering a contract of employment. This count again involved Hendricks and Henderson. The court alleges that between February 21 and April 9, 1969, while the contract of employment between Hendricks, Henderson and appellant was in force and effect, the appellant added to the contract without the knowledge and consent of Hendricks and Henderson, a sentence to the contingency part of the contract which stated that: if Hendricks and Henderson did not pursue their suit (against Kubicek) to judgment, the contingency fee would not apply, but that Smith would be paid on an hourly basis for the time spent on the suit. The special issue inquired:

"Do you find from a preponderance of the evidence that some time between February 21, 1969, and April 9, 1969 the Defendant Farrell Murray Smith willfully altered the contract of employment with Hendricks and Henderson by inserting a paragraph in the contract of employment without their knowledge and consent?

Answer *We do*."

The contract of employment had been executed by Hendricks and Henderson in connection with their employment of the appellant in the Kubicek case. The contract in question contains the purportedly added provision to the effect that should the suit be tried, Farrell M. Smith was to receive a percentage of the recovery. But

if the suit was not tried, then Smith was to be paid for time he spent. The original contract contained several changes, apparently made before the contract was signed. All of these changes had been initialed by the parties, including a change in the percentage of contingency fee recovery. However, the change in the contract giving Smith straight time for his services if the suit was not tried was not initialed. Hendricks and Henderson testified that this provision was inserted after the contract was executed. Smith, on the other hand, apparently sought to show that this change was made as a novation, and was made with the complete agreement of all the parties to the contract. Hendricks and Henderson signed a note for the fair value of the services performed covering the time the appellant spent working on their case until the nonsuit was taken.

Appellant's novation theory as a complete defense to the charge has no effect on the purported wrong of appellant of altering an instrument without the consent of the parties involved.

At the close of the cross examination of Hendricks, appellant's attorney, outside of the presence of the jury, requested permission of the court to introduce testimony that Hendricks and Henderson were homosexuals. The court refused permission. The appellant's attorney then asked permission of the court to make up a bill of exception. The court refused this request.

Appellant's third point of error is:

"This cause should be reversed because the court would not permit a Bill of Exception to show evidence of the relationship existing between the witnesses, Charles W. Henderson and Fred E. Hendricks, which would have shown a bias on the part of Henderson to support the testimony of Fred E. Hendricks."

The appellant argues that he wanted to produce evidence of a relationship between Hendricks and Henderson, to-wit, homosexuality, which would, in effect, show that

because of this relationship, Henderson would be more inclined to support and corroborate Hendricks in his testimony. Not only had the court previously ruled in limine that such testimony would be excluded, but the court went further and refused to permit the appellant to make up his bill of exception on the evidence that appellant wanted to submit. Since we do not have the evidence before us in the form of a bill of exception, we can only speculate on its materiality and relevancy.

The appellant contends he could prove that Hendricks and Henderson were homosexuals. If so, it would mean that they had either been convicted of the crime of sodomy, or had admitted to such unnatural acts that would amount to a commission of this crime. See Pruett v. State, 463 S.W.2d 191 (Tex.Cr.App.1971). Such proof of a former conviction or admission would have amounted to a crime of moral turpitude. This is conduct contrary to the accepted and customary behavior between man and man and is contrary to the rule of decency and good morals. If the appellant could prove that Hendricks and Henderson had had improper sexual relations, it would then have been proper for the appellant to show that the witnesses were biased. Then it would have been up to the jury to determine if this relationship affected their credibility in corroborating each other's testimony.

■ Generally, there is a distinction between competency and credibility. Whether a witness is competent to testify is a question of law to be decided by the trial judge. Whether a witness is credible is a fact question that goes to the weight of the witness's testimony. Although we believe there is little doubt that Hendricks was competent to testify, we do believe that his credibility was very much an issue since the facts involving Counts 4 and 5 were in sharp dispute.

It is within the jury's province to judge the credibility of the witnesses and the weight to be given their testimony. It is the jury's duty to resolve conflicts and inconsistencies in the testimony of the various witnesses. Varnado v. City of Groves, 329 S.W.2d 100 (Tex.Civ.App.—Ft. Worth 1959, writ ref'd n. r. e.). In Walker v. Missouri Pacific Railroad, 425 S.W.2d 462 (Tex.Civ.App.—Houston 14th Dist. 1968, writ ref'd n. r. e.), the court held that "on cross examination of an adverse witness, anything may be shown which might affect the witness's credibility, such as bias, interest and prejudice, and a wide latitude is allowed in such matters." Citing authorities.

■ In regard to the admissibility of mental capacity as the proper subject for impeachment, the main case is Bouldin v. State, 87 Tex.Cr.R. 419, 222 S.W. 555 (1920). Bouldin was being prosecuted for robbery by firearms. There was a question as to the mental capacity of a prosecuting witness. The court held: "It seems to be a well-settled rule that the feeble minded condition of the witness may be shown to impair or impeach his credit as a witness." Citing authorities. "It is laid down by these authorities that the mental capacity of the witness is the proper subject of consideration and impeachment as bearing on his credibility." Ebers v. State, 129 Tex.Cr.R. 287, 86 S.W.2d 761 (1935); Simpson v. Whitesboro National Bank, 120 S.W.2d 462 (Tex.Civ.App.—Waco 1938); Saucier v. State, 156 Tex.Cr.R. 301, 235 S.W.2d 903 (1950). In the latter case, the court said:

"However, the credibility of the witness, and the weight to be given his testimony was for the jury. And upon this question, appellant had the right to offer evidence before the jury as to his insanity or the extent of his impairment of mind, and to fully cross examine the witness upon the character of his commitment."

■ Proof of conviction of any crime, either felony or misdemeanor, may be shown only if it involves moral turpitude and if the conviction is not too remote. The question of remoteness is to be left to

the sound discretion of the trial court which should be overturned by the appellate court only in a case of clear abuse.

■ In the case before us, Hendricks' prior convictions, although they were remote in some degree, they nevertheless affected his credibility in view of the recent admitted perjury at the time of the taking of the deposition. Hendricks' prior mental condition was also remote to some degree. But due to the fact that he broke down and cried at the Kubicek trial and had delusions as to the reason for the prior convictions, we believe that his prior history of mental problems was relevant in explaining this later behavior, which affected his credibility at the trial of this case at bar. These latter acts brought into focus his prior mental condition.

In this case, the witness Hendricks had a history of mental conditions over a period of nearly 17 years, the most recent of which was 8 years prior to the date of trial and was of 3 years duration. The witness was swearing to the conclusiveness of certain facts which the jury apparently believed. The recent evidence of his mental condition, coupled with his past mental history, definitely reflected on his credibility. We hold it was an abuse of discretion for the failure of the trial judge to permit such evidence to be introduced.

■ Rule 372, Texas Rules of Civil Procedure "Bills of Exceptions", allow any party who is dissatisfied with a ruling or an action by the court to embody his dissatisfaction in a written bill. The refusal by the court to allow a party to make a bill, is error. In State v. Biggers, 360 S.W.2d 516 (Tex.Sup.1962) the court said:

"We also approve the holding (of the Court of Civil Appeals) that refusal to permit respondents to have the testimony of the witness included in a bill of exceptions for the purpose of showing the harmful and prejudicial effect of the first ruling was such a denial of the substantial rights of the respondents as to authorize reversal of the trial court's judgment." Citing authorities.

■ If there was admissible evidence of the homosexuality of the two principal witnesses, or admitted evidence of such a relationship between them as might tend to have shown bias, the appellant was entitled to introduce such evidence. We hold that the refusal by the trial court to allow appellant to perfect a bill of exception was reversible error. Callicott v. Callicott, 364 S.W.2d 455 (Tex.Civ.App.—Houston 1st Dist. 1963, writ ref'd n. r. e.); Dorn v. Cartwright, 392 S.W.2d 181 (Tex.Civ.App. —Dallas 1965, writ ref'd n. r. e.). Appellant's points of error two and three are sustained.

■ The appellant was charged with professional misconduct in Counts 2, 3 and 7. In Count 2, the jury found that on or about August 25, 1969, appellant advised a corporate client through its president, Donald B. Brown, that an answer to a lawsuit had to be filed by Friday, August 29, 1969, when he knew that in a lawsuit in a district court the defendant had until Monday next after the expiration of twenty days from date of service in which to file an answer. The jury found that such conduct was dishonorable. Appellant claims as error that the court commented in its submission of the issue, that appellant had made the statement, and limited the question to the time or situation under which it was made.

The evidence showed that the appellant was representing Southwest Copy Machines Company but was later discharged because of a dispute as to appellant's fee. This dispute is of no concern in this count except for background information. Later, a suit was filed by Inwood Business Machines against Southwest Copy and Service Company, appellant's former client. An employee of this company telephoned Brown (its President) in Shreveport, La. immediately and notified him of the suit. Brown

called appellant the same day. His testimony as to that conversation is as follows:

"Q Did you have any discussion with him (the appellant) from Shreveport or later in his presence or by any telephone conversations, discuss what should be done in connection with defending the lawsuit?

A Well, he (the appellant) felt that— he felt that he needed to start acting on it right away because time was very important, only had a few days to answer the case and that he needed to get to work on the things that he needed to file.

Q Did he (appellant) say what period of time you had to answer the case?

A Ten days.

Q Are you positive of that?

A Yes, I'm positive becasue that wasn't the only time we discussed it. There was a week—I talked to him on a Wednesday and a week from that coming Friday was the day something had to be done on it."

The jury considered the testimony of all witnesses, some of which was conflicting, and found that appellant did advise Brown improperly. The effect of the improper advice was to coerce Brown to hire the appellant by giving Brown the impression he had no time or little time to find another lawyer. Prior testimony by Brown established that he was dissatisfied with appellant, but that because of appellant's familiarity with the prior proceedings it would be less expensive, less troublesome and more expedient to hire appellant.

Appellant's contention is unfounded that the structure of the issue comments to the jury that the statement was made by the appellant merely asks the jury to determine when it was made or under what circumstances. The issue was properly framed and submitted. It asks the question whether appellant told Brown on a certain date that an answer had to be filed by Friday of a certain date, when the law is that an answer is to be filed on the *"Mon-*

*day* next after twenty days from date of service of citation." This point is overruled.

The jury found in Count 3 that appellant willfully refused to relinquish possession of certain documents belonging to a Mrs. Flores and to turn them over to Tom McDowell, her new attorney, until March 6, 1970, and that such act was dishonorable conduct. Appellant claims error in four points. He contends that the special issue in question is duplicitous; that the trial court should have submitted appellant's issue to the effect that he believed he had a possessory lien to secure payment of his fee; that the trial court should have submitted a defensive issue to the effect that appellant had the right to retain the file while his fee was unpaid pending a court order requiring release thereof; and that the court's definition of "willful" and "willfully" submits a legal definition for the consideration of the jury.

The evidence showed that attorney McDowell, while in appellant's law firm, had been working on Mrs. Flores' case before he left the firm. After he left appellant's firm he so advised Mrs. Flores of his severance. Mrs. Flores contacted McDowell and asked him to continue his representation of her. McDowell asked appellant for Mrs. Flores' file which request was refused. Mrs. Flores testified that she, as well as McDowell, made several demands of appellant for the file and appellant refused to deliver it to McDowell. Finally, they received the file in piecemeal fashion with some copies of original documents. At no time did the appellant submit a bill to Mrs. Flores for the work that had been done up to the time Mrs. Flores instructed the appellant to turn over the file to McDowell.

None of appellants' points present reversible error. First the issue is not duplicitous. It submits the question of whether appellant refused to turn over the originals documents belonging to Mrs. Flores to Mr. McDowell between certain

dates. Roosth & Genecov Production Co. v. White, 152 Tex. 619, 262 S.W.2d 99, 104 (1953); Industrial Oxygen Co. v. Campbell, 405 S.W.2d 794 (Tex.Civ.App.— Waco 1966). It was not error for the trial court to refuse to submit defendant's issue on whether he believed he had a possessory lien on his client's file, because the appellant continually contended that he did not refuse but did relinquish all of the file to McDowell. He raised no evidence to support such issue.

In the next point, we find that it was not error for the trial court to refuse to submit those suggested defensive issues, because to raise the issue of a possessory lien, the attorney must make a demand for the unpaid amount or balance. Retention of documents is only permitted to secure that debt. No such demand for a debt was ever made by the appellant. We hold that there was no evidence to submit the issue. Additionally, a court order is not a requisite to any part of this issue.

In the last point concerning this count, the appellant complains of the definition in the charge of the court of "willful" and "willfully". We hold it was submitted in substantially correct form to the jury. Rankin v. State, 139 Tex.Cr.R. 247, 139 S.W.2d 811 (1940); Scott v. State, 167 Tex.Cr.R. 57, 317 S.W.2d 734 (1958). No reversible error on these points are presented.

As to Count 7, the jury found that appellant violated Canon 13 in bringing suit against Timothy H. Butler on or about April 17, 1970. Appellant claims as error, in one of his points, that there is no basis for disciplining an attorney for filing suit for a fee where such fee is owed and is not excessive.

The evidence on this count showed that on January 22, 1970, Timothy H. Butler went to see an attorney named Macmanus at appellant's office in reference to a possible divorce action. Butler stated that he was seeking preliminary information be-

cause he had not decided whether to go through with the divorce or not. He saw both appellant and Macmanus while he was in the office. Butler testified that he signed what he thought to be a "credit statement" and an information sheet. Approximately one week later, he and his wife decided to go back together and so informed Macmanus. Macmanus made no comment about a fee. About one week after that, appellant notified Butler orally that he owed appellant $30.00 for the 15 minute conference in the office. Butler stated he did not believe that he owed him anything. About 30 days later, on March 10, 1970, appellant filed suit in the Small Claims Court, Justice of the Peace, Precinct One, Place One, against Butler for the $30.00, plus $100.00 as collection and attorney fees to recover the debt. Butler had not received any bill or other statement evidencing a debt owed to appellant. Prior to receiving the citation and a copy of the petition, Butler called appellant's office and offered to pay $10.00 a week to pay off the $30.00. This offer was refused. His salary was approximately $560.00 a month. Butler, with the aid of a Legal Aid attorney, arranged with appellant to pay off the $30.00. In summary, the evidence is that on January 22, 1970 Butler went to appellant's office initially; that on or about January 29, 1970 Butler notified appellant that there would be no divorce action; that on or about February 6, 1970 appellant orally notified Butler of the fee of $30.00 for the 15 minute conference; that appellant sent no bill or statement; that on March 10, 1970 he filed suit; that in a few days after March 10, 1970, Butler offered to pay the fee off in installments; and finally about March 24, 1970 Butler was summoned to court and settled with appellant for three $10.00 payments, the first of which was cashed by the appellant.

Canon 13 states that lawsuits with clients over fees are to be avoided and "resorted to only to prevent injustice, imposition or fraud." The intent of the canon is to prevent the occurrence of exactly what

happened in this instance. Butler consulted appellant to establish the cost and feasibility of a divorce in case he decided such action was required. The conference lasted only approximately fifteen minutes. Without sending Butler a bill, appellant filed suit and continued prosecuting that suit despite the fact that Butler offered pay in installments. The evidence sustains the jury finding that appellant violated Canon 13 which amounted to professional misconduct. This point is overruled.

We have very carefully considered each and every point of error presented by the appellant. Except for the two points of error which we have sustained, none of the others present reversible error. Individual discussion of each point would unduly lengthen this opinion. Points 1 and 4 through 18 are overruled. Points 2 and 3 are sustained.

All of the matters complained of by the appellant in this appeal were raised in appellant's motion for new trial. After due consideration they were overruled by the trial court and the judgment of suspension was allowed to stand. We find that the evidence supports the jury's findings that appellant was guilty of professional misconduct on all of the counts. (Counts 2, 3, 4, 5 and 7). The findings pertaining to Counts 2, 3 and 7 do not involve Hendricks or Henderson in any way and are not based upon their testimony. No error is presented by the record in any area that affects such counts. (Counts 2, 3, and 7). But, the same is not true insofar as Counts 4 and 5 are concerned. The findings on those counts are supported primarily by the testimony of Hendricks, which was vigorously disputed by appellant. The jury should have been advised of Hendricks' prior mental disturbances and of Hendricks' and Henderson's purported relationship in order to have fairly decided the issues. It was reversible error as to Counts 4 and 5 to have excluded such evidence or not to have permitted a bill of exceptions.

This brings us to the problem of the proper disposition of this appeal. The State Bar Rules (SBR) do not have guidelines for appellate review. We, therefore, must look to the Rules of Civil Procedure (Sec. 21, SBR) and the law generally for our solution. We do not believe that we have any authority to sever Counts 4 and 5 (the two issues where reversible error is present) and to thereby remand those issues for a new trial and at the same time affirm the judgment as to the three remaining issues. This is so because it was a bifurcated trial. The trial court did not make or set punishment in such a way that we could justify or correct the judgment on appeal. We have no way of knowing if the trial judge's determination of a five-year suspension was 5 years on each of the 5 counts to run concurrently, or on a one-year suspension for each count to run consecutively, or a five-year suspension considering all of the misconduct as a whole, or on some other combination. We are not inclined to affirm the trial court's judgment of suspension of 5 years solely on the findings in connection with Counts 2, 3 and 7,[1] since we believe that the full 5 year term of suspension on these counts would be excessive, even though we also believe that a 5 year suspension or even disbarment would have been proper on a finding of guilty on either of Counts 4 and 5. We are unable to say what influence the finding of guilty on Counts 4 and 5 may have had upon the mind of the court. The evidence showed that by far the most serious acts of misconduct were those presented by Counts 4 and 5.

The Supreme Court has stated that:

" . . . Issues of fact raised by the evidence in a disbarment proceeding are decided by the jury where one is requested, but if the verdict established that the defendant has been guilty of professional misconduct, the question of whether he shall be reprimanded, sus-

---

1. This is not the same situation, that the court had in Rowland v. State, 55 S.W.2d

133 (Tex.Civ.App.—Fort Worth 1936, writ dism'd).

pended or disbarred is a matter for the determination of the trial judge in the exercise of a sound judicial discretion. (citing authorities) A contention that there has been an abuse of judicial discretion presents a question of law which can be decided by this Court . . ." State v. O'Dowd, 158 Tex. 348, 312 S. W.2d 217 (1958).

Since we cannot sever the 5 issues (under Rule 434, T.R.C.P.) because of the non-severability of the punishment from the issues, and since we cannot remit a part of the suspension as excessive (under Rule 440, T.R.C.P.) because this is a law question, and since we cannot affirm the 3 remaining issues and leave in effect the 5 year suspension, as such a suspension on these 3 counts would amount to an abuse of discretion, we therefore believe that our only recourse is to reverse and remand the entire proceeding for a new trial.

■ We have reviewed all of the evidence and hold that it would have been an abuse of judicial discretion for the trial court to have assessed as punishment 5 year suspension on the 3 remaining counts (Counts 2, 3 and 7). On the other hand, the attorney's conduct was dishonorable in the discharge of his professional duty (in these three counts). The willful acts which he has committed (as was found by the jury) were those which an attorney endowed with an ordinary sense of honor would not have done. We therefore believe that we are warranted in continuing the appellant's suspension until this case is retried. We believe it is the intent of the State Bar Rules and a function of our courts in this regard. Compare Sec. 30, Texas Bar Rules. Upon a retrial, the trial court (if there is an affirmative finding of guilty on one or more counts) shall reassess and determine appropriate disciplinary action based upon an exercise of its sound judicial discretion. Sec. 28, State Bar Rules.

The distasteful work of the grievance committee and later of the trial court in performing their functions under Art. XII of the State Bar Rules is nevertheless required so that the public in general can be protected from attorneys whose professional misconduct is such that warrants their suspension from the practice of law. The courts, as well as lawyers, are the chief protectors of our society in enforcing the rules and regulations for disciplining, suspending and disbarring attorneys. See Justice Pope's opinion in State of Texas v. Sewell, Tex., 487 S.W.2d 716. Because the appellate courts as well as the trial courts of this State have an interest in the attorneys who practice law, and since the evidence at this stage of the proceedings supports findings of professional misconduct on the part of the appellant on 3 counts, we believe his suspension should stay in effect until one or all of the issues in this case is re-tried.

Therefore, in remanding the entire proceeding to the trial court we instruct the court below to continue its present order of suspension of the appellant's right to practice law until a new trial is had.

The trial court is instructed to give the appellant and the State Bar of Texas a preferred setting in the re-trial of this proceeding as the State Bar Rules provide. See Sec. 27, State Bar Rules "Preferred Setting". The judgment of the trial court is reversed and the cause is remanded with instructions.

## OPINION AFTER MOTION FOR REHEARING

■ The State of Texas, appellee herein, has filed its motion requesting this Court to file findings of fact based upon facts which were alleged to have occurred during submission and oral argument of the case. The appellee contends that during oral argument they heard the attorney for the appellant waive his third point of error. Because of such purported announcement by him, the appellee did not argue or even mention in its oral argument its response or defense to this point. Cit-

ing Rule 424, T.R.C.P. Answering appellee's motion, appellant states that he did not waive his point of error number three. Anticipating appellant's answer, appellee says that this makes a controverted issue of fact which occurred in the Court of Civil Appeals upon which this Court should make its findings of fact. (Rule 453, T.R.C.P.) Appellee's motion requests that we reconcile this dispute so that only a question of law will appear in its application for writ of error to the Supreme Court. (Rule 476, T.R.C.P.). Appellee's motion is without merit for a number of reasons.

Rule 424, which restricts arguments in the intermediate appellate courts to disputed points of law or fact, is permissive in nature. It does not require that every point of error be argued. As a practical matter many points of error are submitted on the briefs only and only the pertinent points are argued in the short time allotted in the intermediate court. Appellee's brief answered the appellant's brief on this particular (third) point of error.

The question of whether or not the appellant waived his third point of error is a procedural question and not a question of fact. Such a procedure could and should have been handled by motion filed by the parties during oral argument or subsequently by post submission motion. The appellee failed to take any procedural steps to bring this to the attention of the Court at the time of the alleged occurrence.

Appellee's motion for this Court to file findings of fact under Rule 453, T.R.C.P. is inappropriate. This rule concerns fact findings occurring during the actual trial, not at the appellate level. The intermediate court has no court reporter. It does not function to find facts. As the Supreme Court stated in Wisdom v. Smith, 146 Tex. 420, 209 S.W.2d 164 (1948) and restated in City of Beaumont v. Graham, 441 S.W.2d 829 (Tex.Sup.1969) "courts of civil appeals have no jurisdiction to make original findings of fact in cases on appeal; they can only 'unfind' facts. 38 Texas L.

Rev. 361, at 368." Additionally, appellee's motion was filed too late to give us jurisdiction to act. It was filed after we overruled its motion for rehearing. Such a motion must be made within the time prescribed under Rule 453, T.R.C.P.

Appellee's motion for filing of findings of fact is overruled.

YOUNG, J., not participating.