Richard C. NOLAN II, a/k/a Rick
Nolan, and Richard C. Nolan, a/k/a
Dick Nolan, Plaintiffs-Appellants,

v.

Percy FOREMAN, Defendant-Appellee.

No. 81–1007

Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 14, 1982.

Rehearing and Rehearing En Banc
Denied Feb. 24, 1982.

Allen J. Kincaid & Associates, Allen J. Kincaid, Brush, Colo., for plaintiffs-appellants.

Sam C. Bashara, San Antonio, Tex., for defendant-appellee.

Before CLARK, Chief Judge, RUBIN, and SAM D. JOHNSON, Circuit Judges.

SAM D. JOHNSON, Circuit Judge:

Richard C. Nolan, Sr. (Dick), and Richard C. Nolan, Jr. (Rick), appeal a judgment entered on a jury verdict in favor of the younger Nolan's former counsel, defendant Percy Foreman.[1] Foreman, a criminal defense attorney, was retained by the Nolans to appeal Rick Nolan's conviction on a three-count marijuana trafficking indictment, and to defend him against a related two-count indictment, both in the United States District Court for the Western District of Texas. The Nolans sought return of a part of the $25,000 fee paid to Foreman by Dick Nolan on behalf of his son. They allege that Foreman's fee was excessive, and that Foreman breached his agreement to provide professional services by, among other things, refusing to return papers and records relating to Rick Nolan's defense until the Nolans agreed to release him from all malpractice liability.[2] Errors in the jury instructions require that this case be reversed and remanded for a new trial.

In dispute on appeal is the law governing two specific aspects of an attorney's relationship with his client.[3] The parties agree, and we concur, that the case is to be decided under the law of Texas. The relationship was entered into in Houston, and Foreman's representation of Rick Nolan was before the federal district court sitting in San Antonio. *Budge v. Post*, 643 F.2d 372 (5th Cir. 1981).

### A.

As Foreman required, the Nolans paid his fee in full, in advance of his inception of professional services on Rick's behalf. The

---

1. The Nolans, citizens of Colorado, invoke the diversity jurisdiction of the district court in their attempt to obtain a return of $23,000 from Foreman, a citizen of Texas. The requisites of 28 U.S.C. § 1332 are satisfied. Jurisdiction exists in this Court under 28 U.S.C. § 1291.

2. The Nolans also charged that Foreman breached his agreement with them by advising Rick Nolan to plead *nolo contendere* to the second indictment, instead of trying the case as he had allegedly promised to do; by threatening to withdraw from that case, minutes before trial was to begin, if Rick Nolan did not agree to plead instead of stand trial; and by failing to file a petition for writ of certiorari in the Supreme Court and a motion for reduction of sentence in the district court after Rick Nolan's conviction on the first indictment was affirmed. In their response to a special interrogatory, the jury found that Foreman did not in any way breach his employment contract with the Nolans during the period in which he was actively engaged in Rick Nolan's representation.

3. Foreman contends that because he and the Nolans reached agreement on the amount of the fee before he began representing Rick Nolan, an attorney/client relationship had not yet begun, and that, therefore, their agreement should be evaluated under contract principles governing common commercial transactions. This position is incorrect. The fiduciary relationship between an attorney and his client extends even to preliminary consultations between the client and the attorney regarding the attorney's possible retention. *Braun v. Valley Ear, Nose, and Throat Specialists*, 611 S.W.2d 470 (Tex.Civ.App.—Corpus Christi 1980, no writ). All that is required under Texas law is that the parties, explicitly or by their conduct, manifest an intention to create the attorney/client relationship. *State v. Lemon*, 603 S.W.2d 313 (Tex.Civ.App.—Amarillo 1980, no writ). In this case, the Nolans approached Foreman with a request that he represent Rick Nolan in his forthcoming trial and appeal. At their scheduled meeting, a discussion of the cases against Rick Nolan ensued; only then did Foreman state his fee. Foreman's fiduciary responsibilities attached when he entered into the discussion of Rick Nolan's legal problems with a view toward undertaking representation.

Nolans argued at trial and on appeal that even if Foreman adequately completed all of his obligations under the employment contract, this advance fee may be reviewed for reasonableness and be reduced if found to be unreasonable. The district court, however, charged the jury that "you will be concerned with what constitutes a reasonable fee only if you first determine that the $25,000 was a retainer and not a flat fee." [4] Record, vol. III, at 1104. The next section of the jury instructions adopted Foreman's view that flat fee agreements entered into at the outset of the attorney's representation are to be evaluated as commercial contracts. The district court instructed the jury as follows:

> I am instructing you as to the law again about this first question—when the attorney and client are mentally competent, stand at arm's length towards each other, and enter into a valid contract regarding legal representation, the reasonableness or unreasonableness of the attorney's fees fixed under their contract is immaterial. In the absence of fraud, accident or mistake, the client is unable to relieve himself of the provisions of the contract. The contract alone must be looked to in determining the fee permissible to be charged under the circumstances.

*Id.*

Special interrogatories given to the jury followed this approach to the case. The jury was asked:

4. Nowhere in the jury instruction were the terms "retainer" or "flat fee" explained. The jury was guided only by trial testimony, which defined a "retainer" as monies paid in advance from which expenses and fees were to be deducted, and a "flat fee" as an amount agreed to by the attorney and his client, at the outset of their professional relationship, which would constitute payment in full for the professional services rendered and the related expenses incurred in the representation contemplated.

5. In its entirety, this rule states:
   **DR 2–106. Fees for Legal Services.**
   (A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.
   (B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and

Special Interrogatory # 1
Do you find from a preponderance of the evidence that the $25,000.00 paid to Percy Foreman was a retainer for legal services, from which he was to subtract reasonable attorney's fees and expenses?
ANSWER "YES" OR "NO." WE ANSWER: _____
If you have answered Special Interrogatory # 1 "YES," proceed to answer Special Interrogatory # 2. If you have answered Special Interrogatory # 1 "NO," do not answer Special Interrogatory # 2; proceed to answer Special Interrogatory # 3.

Special Interrogatory # 2
What sum of money, if any, do you find from a preponderance of the evidence would be reasonable attorney's fees and expenses due Percy Foreman for his representation of Richard C. Nolan II?
ANSWER IN DOLLARS AND CENTS, IF ANY. WE ANSWER: _____
The first interrogatory was answered, "No." The second was not answered. Record, vol. I, at 49.

The starting point for our review of this instruction is with the Rule Governing the State Bar of Texas DR2–106, Tex.Civ.Code Ann. tit. 14 App., art. 12 § 8 DR2–106 (Vernon's 1980), which states, "(A) A lawyer shall not enter into a fee agreement for, charge, or collect an illegal or clearly excessive fee." [5] DR2–106 does not condition the attorney's duty to charge only a reasonable

firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
(3) The fee customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
(5) The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with the client.

fee on the form in which the fee is paid or quantified. To the contrary, DR2–106(B)(8) includes in a list of factors to be considered in determining whether a fee is reasonable "[w]hether a fee is fixed or contingent." The inclusion of the nature of the fee agreement in an evaluation of the reasonableness of the fee appears to refer not to the inapplicability of the legal and ethical constraints articulated by DR2–106 to flat fee arrangements, but to the propriety of considering, when setting a fee, uncertainties regarding ultimate entitlement to a fee. *See Archer v. Griffith*, 390 S.W.2d 735, 741 (Tex.1964).

This interpretation of DR2–106 finds support in *Braselton v. Nicolas & Morris*, 557 S.W.2d 187 (Tex.Civ.App.—Corpus Christi 1977, no writ). *Braselton* held a flat $18,-000 fee charged for services rendered in connection with a divorce and property settlement reviewable for excessiveness under the standard of DR2–106.

A slightly different approach to the issue is evident in a line of Texas decisions holding that an attorney, upon entering into a professional relationship, assumes a common-law fiduciary obligation to his client. *Cole v. Plummer*, 559 S.W.2d 87 (Tex.Civ. App.—Eastland 1977, writ ref. n. r. e.); *Archer* at 739; *Holland v. Brown*, 66 S.W.2d 1095 (Tex.Civ.App.—Beaumont 1933, writ ref.). Within such a relationship, it is presumed that negotiations between the attorney and client were not at arm's length, but that the client relied upon his attorney, as an advisor in a position of trust, to consider the client's interests and to refrain from turning these interests to the attorney's advantage. Indeed, *Cole*, relying on *Archer*, held not only that the fee was reviewable for reasonableness, but that the fiduciary nature of the relationship between the attorney and his client demanded that the burden of proving the reasonableness of the fee be placed on the attorney. *Cole* at 89, *citing Archer* at 739. Examination of these cases indicates that the attorney's common law fiduciary duty to his client, like his duty under DR2–106, exists without regard to the nature of the fee agreement. The attorney fee at issue in *Cole* was set by contract in advance of rendition of services as a one-third interest in real property owned by the client. That fee differed from the fee in this case only in that it was quantified by reference to the ascertainable value of certain real estate. *Archer* applied the same approach to the evaluation of the reasonableness of a contingent fee.

That the attorney and the client did in fact stand at arm's-length, in a bargaining relationship between parties of roughly equivalent strength, may be considered by the jury in its evaluation of whether the attorney breached his fiduciary duty. *Nowell v. Dick*, 413 F.2d 1204, 1210 (5th Cir. 1969). So, of course, may be the client's capacity to contract, and indicia of the presence or absence of fraud, misrepresentation, or over-reaching. *Braselton* at 188; *Archer* at 739. Those considerations, however, like the form in which the fee is to be paid, are not determinative of whether a fee agreement is susceptible to review.

■ On remand, then, the jury is to consider whether Foreman breached his fiduciary duty to Rick Nolan, and whether, in consideration of DR2–106's nonexclusive list of factors relevant to an evaluation of the reasonableness of a fee, as well as such other factors as may be appropriate and helpful to this evaluation, the $25,000 charged by Foreman to represent Rick Nolan was clearly excessive.[6]

### B.

The Nolans offered into evidence letters written by Foreman to the Nolans, after he

---

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

(C) A lawyer shall not enter into an arrangement for, charge, or collect a contingent fee for representing a defendant in a criminal case.

6. Foreman argues that even if the flat fee is reviewable under DR2–106, no issue of reasonableness was raised because all of the attorneys who testified to their expert opinion of the fee agreed that the fee was reasonable for the services rendered. These answers were, however, given in response to hypothetical questions posed by Foreman's counsel detailing a version of Foreman's services which was vigor-

was formally discharged as Rick Nolan's counsel, in which Foreman refused to return Rick Nolan's legal papers and documents until the Nolans agreed to release him from threatened suit. The Nolans charge that Foreman's attempt to secure his exoneration in exchange for documents belonging to Rick Nolan constituted a violation of his duties under State Bar Rules DR6–102 and DR2–110(A)(2), which govern an attorney's ability to limit his malpractice liability,[7] and delineate the attorney's responsibilities to his client upon his withdrawal from representation.[8] Construing these violations as breaches of covenants implied in the employment contract, the Nolans charge that Foreman's breaches of the contract left him entitled only to the reasonable value of his services, rather than the contractual fee.

The district court, however, again adopted Foreman's view of the matter. The jury was instructed:

> [W]e are concerned only with whether the Defendant breached his contract by unprofessional conduct before he was discharged by the Plaintiffs.
>
> Under any view of the evidence, the latest date on which Defendant was discharged was April 8, 1976. There is testimony that the Defendant may have violated professional standards by failing to obey a request after April 8, 1976 to give his file to the Plaintiffs.
>
> There is also testimony that the Defendant may have violated professional standards after April 8, 1976 by attempting to secure a release of liability from the Plaintiffs as a condition of giving his file to them. Any testimony regarding al-

leged professional misconduct after April 8, 1976 is irrelevant to the question of whether the Defendant breached his contract of employment prior to his being discharged by the Plaintiffs.

. . . . .

> [I]n this case, we are concerned only with a violation of professional standards that occurred before April 8, 1976.

Record, vol. VIII, at 1111–12.

This instruction misconceives the nature of the attorney/client relationship. As this Court has stated,

> [A]n attorney's duty to a client does not necessarily and immediately end or begin with the discrete formality of a letter or motion. Somewhat more passive, yet affirmative, duties may remain or arise over the client representation continuum when possible prejudice to prisoner's case should be recognized.

*Pressley v. Wainwright*, 540 F.2d 818, 821 n.10 (5th Cir. 1976), *cert. denied*, 430 U.S. 987, 97 S.Ct. 1688, 52 L.Ed.2d 383 (1977). The period in which Foreman allegedly refused to relinquish Rick Nolan's papers included the deadline dates for a motion for reduction of sentence in the district court, and a petition for writ of certiorari to the Supreme Court. At any time during his confinement, of course, the younger Nolan could have asserted such rights as were available to him under 28 U.S.C. § 2254, the federal analog to the writ of habeas corpus.

It is not necessary, however, for Rick Nolan to show that he was prejudiced because he was unable to obtain his papers. Under Texas law, a client has the right to return of his papers on request. *Hebisen v. State*, 615 S.W.2d 866, 868 (Tex.Civ.App.—Houston 1981, no writ); Rule Governing the State Bar of Texas DR9–102(B)(4), Tex.Civ.

---

ously disputed by the Nolans. We agree with the district court that an issue of reasonableness was raised.

**7.** In pertinent part, DR2–110 states:

> (2) In any event, a lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is

entitled, and complying with applicable laws and rules.

Tex.Civ.Code Ann. tit. 14 App., art. 12 § 8 DR2–110 (Vernon's 1980).

**8.** DR6–102 reads:

> (A) A lawyer shall not attempt in advance to exonerate himself from or limit his liability to his client for his malpractice.

Tex.Civ.Code Ann. tit. 14, App., art. 12 § 8 DR6–102 (Vernon's 1980).

Code Ann. tit. 14 App., art. 12 § 8, DR9–102(B)(4) (Vernon's 1980); *Smith v. State*, 490 S.W.2d 902 (Tex.Civ.App.—Corpus Christi 1972, writ ref. n. r. e.). An attorney may withhold such papers in the face of a request for their return only if he is claiming a lien against these papers for amounts due from the client for professional services and expenses. *Smith* at 910; *see* Ethics Opinion 395, Tex.Bar J. 562 (June, 1980). Such is not the case here. Foreman has at no time claimed that the Nolans failed to compensate him fully for the services he rendered. If proven, the Nolans' allegations would support the conclusion that Foreman deliberately attempted to use property belonging to a client, which property he held in trust, to assure his own exoneration from responsibility for breaches of that trust. Such an act certainly violates the Texas State Bar rules, as well as the fiduciary duties owed by an attorney to his client.

■ Finally, Foreman argues that even the Nolans' proof of their allegations would be of no benefit to them, because they chose the wrong path to relief. Foreman contends that, especially in light of the jury's determination that he did not breach the employment contract during the period in which he actively represented Rick Nolan, his subsequent breach of the duty to return a client's legal papers on demand would not constitute a material breach of the contract. He suggests that the proper remedy is, instead, a damage action sounding in tort.

We agree. Our agreement, however, does not preclude reversal and remand on this point. Texas courts have held that allegations of violations of the State Bar rules, even if cast by the plaintiff in terms of breach of contract, state a cause of action for legal malpractice in the nature of a tort action.[9]  *Citizens State Bank of Dickinson v. Shapiro*, 575 S.W.2d 375, 386 (Tex. Civ.App.—Tyler 1978, writ ref. n. r. e.); *see Woodburn v. Turley*, 625 F.2d 589, 592 (5th Cir. 1980). The district court may, under the authority of F.R.Civ.P. 54(c), grant the relief to which the Nolans are entitled, even though they have not demanded that relief in their pleadings. 6 Moore's Federal Practice ¶ 54.62 at 1266–67; *Guillen v. Kuykendall*, 470 F.2d 745 (5th Cir. 1972).

On remand, the jury is to be instructed to determine whether Foreman did in fact condition his release of papers and documents relating to Rick Nolan's defense on the Nolans' exoneration of him from all liabilities arising out of his representation of Rick Nolan. Proof of such a breach of his professional responsibilities will entitle the Nolans to damages appropriate under Texas law.

REVERSED AND REMANDED.

---

9. Foreman argues that such relief is foreclosed by *Martin v. Trevino*, 578 S.W.2d 763 (Tex.Civ. App.—Corpus Christi 1978, writ ref. n. r. e.), which he construes to hold that the Texas State Bar rules do not create a private cause of action. *Martin* involved a physician who attempted to sue his former patient's attorney under DR7–102(A), claiming that his former patient's medical malpractice suit against him was frivolous, and its prosecution was a violation of the attorney's professional responsibilities. The case is best read to hold that a third party incidentally injured by an attorney's exercise of his professional duties cannot invoke to his benefit the standards by which an attorney's professional and confidential relationship with his client is governed. Foreman's reading is not consonant with the other Texas cases herein discussed which have allowed client actions under the standards established by the Texas State Bar rules.